JOHN FLYNN, Defendant in Error, *vs.* THE CHICAGO CITY
RAILWAY COMPANY, Plaintiff in Error.

*Opinion filed June 20, 1911.*

1. EVIDENCE—*ordinance invoked as a defense is admissible un-
der general issue.* Where a cause of action is predicated upon an
ordinance the ordinance must be specially pleaded, but if an ordi-
nance is invoked as a defense it is admissible under a plea of the
general issue and need not be specially pleaded.

2. SAME—*when an ordinance requiring vehicle to display light
is admissible.* Where the injury complained of resulted from de-
fendant's street car striking a buggy which was being driven along
the street in the night time without a light being displayed, the
defendant is entitled to introduce in evidence an ordinance mak-
ing the driving of vehicles under such circumstances unlawful.

3. NEGLIGENCE—*rule where person is injured by collision when
riding in another's vehicle.* The negligence of the owner and
driver of a vehicle cannot be imputed to a person who is riding
with him, in case of a collision between the vehicle and the street
car, but such person is responsible for his own negligence, and if
his own negligence contributes to his injury he cannot recover.

4. SAME—*when person riding with another cannot recover for
injury from collision.* A person injured in a collision between a
street car and a buggy in which he was riding with the owner in
the common enterprise of trying out the latter's horse with a view
to buying it, cannot recover damages where the proximate cause
of his injury was his own negligence in joining with the owner,
without objection, in testing the danger of driving along the street
at night without a light being displayed upon the buggy, as re-
quired by ordinance.

5. INSTRUCTIONS—*when an instruction as to contributory neg-
ligence should be given.* An instruction in a personal injury case
stating that if the plaintiff, by using his faculties with ordinary
and reasonable care in looking out for danger, could have avoided
the injury but negligently failed to do so, and thereby contributed
to his injury, then he cannot recover, states a correct proposition
of law, and should be given if the principle therein contained is
not covered by any other given instruction.

WRIT OF ERROR to the Appellate Court for the First
District;—heard in that court on appeal from the Superior
Court of Cook county; the Hon. MARCUS KAVANAGH,
Judge, presiding.

GEORGE W. MILLER, (LEONARD A. BUSBY, of counsel,) for plaintiff in error.

MCGOORTY & POLLOCK, for defendant in error.

Mr. JUSTICE HAND delivered the opinion of the court:

This was an action on the case commenced in the superior court of Cook county by the defendant in error against the plaintiff in error to recover damages for a personal injury alleged to have been sustained by the defendant in error in consequence of a collision between a buggy in which he was riding and an electric car operated by the plaintiff in error on one of the public streets of the city of Chicago. The case was tried upon a declaration containing two counts. The negligence charged in the first count was, that the defendant, by its servants, so carelessly and negligently drove and managed said car that by and through the negligence and improper conduct of the defendant and its servants said car ran and struck with great force and violence upon and against said buggy; and the second count charged that the defendant, by its servants, carelessly and negligently drove the said car upon one of the public streets of the city without ringing a bell or giving warning of any kind. The general issue was filed, and a trial resulted in a verdict and judgment in favor of the defendant in error in the sum of $5000, which judgment was affirmed by the Appellate Court for the First District, and the cause has been removed into this court for further review by writ of *certiorari.*

Three reasons are urged as grounds for reversal in this court: (1) The contributory negligence of the defendant in error; (2) the rejection of proper evidence; and (3) the refusal to give to the jury plaintiff in error's fourth offered instruction.

The defendant in error and one White were riding in a single-seated buggy drawn by one horse owned and driven

by one Cox upon Sixty-ninth street, an east and west street in the city of Chicago, at about seven o'clock in the evening of February 11, 1906, on which street the plaintiff in error operated a double track electric street railway, the south track being the east-bound and the north the west-bound track. When near Prairie avenue an electric car ran against the buggy, and the same was capsized and the occupants were thrown to the ground and the defendant in error was severely and permanently injured. Thus far there is no conflict in the evidence. There is, however, an irreconcilable conflict in the evidence as to the manner in which the collision occurred. The evidence of the defendant in error tended to show that Cox was driving said horse and buggy, at a moderate speed, east upon the south track, and that a car overtook him from the west and ran against the rear of the buggy with such force that the buggy, with its occupants, was thrown over the horse, and when the car was stopped, the horse, by the force of the impact, was facing the car; while the evidence of the plaintiff in error tended to show that the horse and buggy were being driven west upon the south side of the track but in such close proximity to the south rail that the car, as it passed, struck the buggy and the buggy was capsized. It was undisputed that when the car was stopped the horse and buggy were near the south-west corner of the car and the horse was facing west; that the rear of the buggy or the front of the car was not injured, but there were marks upon the buggy and upon the car which indicated that the right front wheel of the buggy had come in contact with the south-east corner of the car. The jury accepted the view of the witnesses for the defendant in error. In the condition in which the evidence appears in this record it was necessary that the rulings of the court upon the admission of evidence and upon the instructions to the jury should have been substantially correct in order to insure to the parties a fair trial. It also appears from the evidence

that the occupants of the buggy had been drinking during the evening and were somewhat intoxicated at the time of the accident; that the horse which Cox was driving was blind; that the night was dark; that the street car was well lighted; that no light was displayed upon the buggy; that Cox was out with the defendant in error and White for the purpose of exhibiting his horse to the defendant in error with a view to sell him the horse; that they had driven some distance, a part of the time the driving being done by Cox and a part of the time by defendant in error.

At the time of the accident there was in force in the city of Chicago an ordinance which made it unlawful for the owner or driver of a wheeled vehicle similar to that in which the defendant in error was riding at the time of the accident, to use the same in the night time upon the streets of the city without having displayed thereon a light. At the time of the accident this ordinance was being violated, and the plaintiff in error, after proving that there was no light displayed upon the buggy in which Cox and his companions were riding, offered in evidence said ordinance, which was excluded by the court, and it is now urged that the action of the court in excluding such ordinance constitutes reversible error. The ruling of the court upon the admissibility of such ordinance is justified by the defendant in error on the grounds, first, that the ordinance was not specially pleaded; and second, that, conceding the ordinance was being violated by Cox at the time of the collision and that its violation was negligence *per se* as to Cox, the negligence of Cox cannot be imputed to the defendant in error, and it is urged that the ordinance, as to the defendant in error, was properly excluded.

It is undoubtedly true that where a cause of action is predicated upon a statute or ordinance the statute or ordinance must be pleaded, but where, as here, the action is not predicated upon the ordinance but the ordinance is invoked as a defense, we think such ordinance may be prop-

erly admitted in evidence under the general issue. The admissibility of an ordinance under the general issue does not differ, in principle, from the admissibility of a foreign statute as a matter of defense, and the case of *Christiansen* v. *Graver Tank Works,* 223 Ill. 142, we think is in point. On page 151 of that case it was said: "The general rule is that a foreign law must be pleaded. That rule has its exceptions, and it does not apply in a case like this. The plea of not guilty was filed, and under that plea the appellee was properly permitted to introduce in proof, as a part of its defense, the law of the State of Indiana, so far as it was material, to show there was no liability resting upon appellee to respond in damages to appellant for the injury which he had sustained. In *City of Chicago* v. *Babcock,* 143 Ill. 358, on page 364, it was said: 'In such an action [an action on the case] the defendant is permitted, under the general issue, to give in evidence a release, a former recovery, a satisfaction, or any other matter *ex post facto* which shows that the cause of action has been discharged or that in equity and conscience the plaintiff ought not to recover.' In *Thompson-Houston Electric Co.* v. *Palmer,* 52 Minn. 174, it was held that the laws of another State, as to pleading and proof, stand upon the same footing as any other facts, and are not required to be pleaded when they are mere matters of evidence." We are of the opinion the ordinance was properly admissible in evidence under the general issue.

As to the second proposition, while it is true the negligence of Cox could not properly be imputed to the defendant in error, still the defendant in error was responsible for his own negligence, and if his own negligence contributed to his injury he could not recover. It was therefore legitimate to make proof of any fact which would tend to establish the negligence of the defendant in error. The evidence showed that the defendant in error and Cox, who owned the horse and buggy, were engaged in a com-

mon enterprise, viz., that of testing the qualities of the horse; that Cox had driven the horse for a time and then the defendant in error had taken the lines; that the night was dark; that the road south of the tracks was rough; that the horse was blind; that there were three men in a single-seated buggy and that the occupants of the buggy were all more or less intoxicated. In view of these facts we are of the opinion that it was proper to make proof that the vehicle in which the parties, at the time of the accident, were riding, was being driven upon the street in violation of law, which proof would have raised the presumption that all the occupants of the buggy were, as a matter of law, guilty of negligence, which negligence, if it was the proximate cause of the injury, would defeat a recovery. This view, we think, is sustained substantially by all the authorities.    Mr. Beach, in his work on Contributory Negligence, (3d ed. sec. 115,) thus states the law: "It is everywhere held, on familiar grounds, that if the negligence of the occupant contributes with that of the driver and a third person there can be no recovery against the latter. Thus, if A, being driven in the carriage of B, who is not a common carrier, willingly joins B in driving over a place obviously dangerous and is injured in consequence, A has no right of action against the municipality. And where a passenger has reason to apprehend danger he is not at liberty to leave the exercise of due care to the driver, alone. For example, where husband and wife were sitting upon the same seat in a vehicle driven by the husband and both were killed by a collision at a crossing, in an action brought by the administratrix of the wife against the railroad company it was held that she had no right, because her husband was driving, to omit some reasonable and provident effort to see for herself that the crossing was safe, and that she was bound to look and listen. So it has been held that a failure to look and listen, on the part of one riding with his back to the driver, while approaching a well known

250 — 30

railroad crossing at a fast trot, or to warn the driver, or to take any precautions whatever, was contributory negligence barring recovery. In cases of this kind it is no less the duty of the passenger, where he has the opportunity to do so, than of the driver, to learn of the danger and avoid it if possible."

The author of Elliott on Railroads, (vol. 3, 2d ed. sec. 1174,) among other things, says: "The general rule is that the negligence of the driver of a vehicle with whom the injured person is riding will not be imputed to such injured person. But where persons riding in a vehicle all take part in managing it and the team drawing it, there is reason for holding that all are bound to exercise ordinary care to avoid collisions with railroad trains. Where the driver is the agent or servant of the injured person it is held that the negligence of the former is attributable to the latter. It is obvious that where the negligence of the person who receives the injury contributes to the injury he cannot escape the consequences of his own carelessness. Thus, where one person riding with another saw the headlight of an approaching locomotive, it was held that he was guilty of contributory negligence in failing to warn the driver of the vehicle in which he was riding. If the person riding in the vehicle knows that the driver is negligent and he takes no precautions to guard against injury he cannot recover, for in such case the negligence is his own and not simply that of the driver. The plaintiff can not rightfully omit to use care in blind dependence upon another, but must use care proportionate to the danger of which the facts convey knowledge."

In *Hoag* v. *New York Central and Hudson River Railroad Co.* 111 N. Y. 199, a husband and wife were killed by collision with a passenger train while attempting to cross the company's track at a crossing. The husband was driving, and the wife, for whose death the suit was brought, was riding with him on the way to their home. There

was a directed verdict for the defendant and judgment thereon. The Court of Appeals reversed this judgment on the ground that under the facts in that case the question of contributory negligence on the part of the wife should have been submitted to the jury, and Judge Finch, writing for the court, suggested the inferences which could be drawn both for her and against her from the evidence on that question. The following quotation from the opinion is directly in point (p. 203) : "If they did not see it, [referring to the train,] or, at least, the deceased did not see it, she was negligent, for she was bound to look and listen, and the facts show that if she had looked she could have seen, and would have seen, the approaching train. She had no right, because her husband was driving, to omit some reasonable and prudent effort to see for herself that the crossing was safe."

In *Brickell* v. *New York Central and Hudson River Railroad Co.* 120 N. Y. 290, the Court of Appeals had the same question before it again. The plaintiff was injured through a collision between a wagon in which he was riding and an engine hauling a train, at a highway crossing. The plaintiff was riding on the same seat with the driver of a single-horse buggy and paid the driver for carrying him a short distance from a station on the company's road to the village of Palmyra. The accident was in the early afternoon. It had been snowing some, the wind was blowing and the top of the buggy was raised and enclosed, except in front. Neither the driver nor the plaintiff made any effort, as they approached the crossing, to ascertain if a train was approaching. There was a judgment in favor of defendant, which the Court of Appeals affirmed. The court in its opinion said that the evidence showed contributory negligence on the part of the plaintiff, and then continued (p. 293) : "The excuse attempted to be set up for such conduct, that the top of the buggy and the snow and wind rendered it more difficult to hear the noise of an

approaching train, seems to prove and emphasize their care-
lessness and want of attention in making an effort, under
those circumstances, to learn there was no train approach-
ing the crossing. They well knew of the condition of
things and of the location and surroundings of the cross-
ing, and that they were called upon to use more than ordi-
nary prudence in effecting the crossing under such circum-
stances. The general rule in this class of cases is, that
the burden of establishing, affirmatively, freedom from con-
tributory negligence is upon the plaintiff, or, in the language
of the opinion in *Tolman* v. *S. B. & N. Y. R. R. Co.* 98
N. Y. 202, that 'plaintiff approached the crossing where the
collision and injury occurred, with prudence and care and
with senses alert to the possibility of approaching danger.'
And this rule obtains even where the railroad company neg-
lects to ring its bell or sound its whistle, as required when
its trains approach a crossing. (*Cullen* v. *D. & H. C. Co.*
113 N. Y. 688.) Nor do I think that this rule is to be re-
laxed in favor of the plaintiff because of the fact that he
was being carried in a vehicle owned and driven by an-
other. The rule that the driver's negligence may not be
imputed to the plaintiff should have no application to this
case. Such rule is only applicable to cases where the re-
lation of master and servant or principal and agent does
not exist, or where the passenger is seated away from the
driver or is separated from the driver by an enclosure, and
is without opportunity to discover danger and to inform
the driver of it. (*Robinson* v. *New York Central and
Hudson River Railroad Co.* 66 N. Y. 11.) It is no less
the duty of the passenger, where he has the opportunity to
do so, than of the driver, to learn of danger and avoid it
if practicable. The plaintiff was sitting upon the seat with
the driver, with the same knowledge of the road, the cross-
ing and the environments, and with at least the same, if
not better, opportunity of discovering dangers, that the
driver possessed and without any embarrassment in com-

municating them to him. The rule in such case is laid down in *Hoag* v. *New York Central and Hudson River Railroad Co.* III N. Y. 199, where husband and wife were sitting upon the same seat in a vehicle driven by the husband and both killed by a collision at a crossing, and in an action brought by the administratrix of the wife against the railroad company it was held 'that she had no right, because her husband was driving, to omit some reasonable and prudent effort to see for herself that the crossing was safe.' "

In *MacGuire* v. *New York City Railway Co.* 102 N. Y. Supp. 749, the plaintiff and Dr. Mandel were sitting on the back seat of plaintiff's victoria, drawn by two horses driven by a coachman. There was a collision between the victoria and a street car, resulting in the plaintiff's injury, for which he sued and recovered a judgment, which, on appeal, was reversed. This case contains an element not in the *Hoag* and *Brickell cases,*—*i. e.,* the driver was the servant of the plaintiff,—so that it might be said that the plaintiff, having control over the driver, was chargeable with his negligence, but the opinion turns upon the negligence of the plaintiff himself rather than upon the negligence of the driver. The court said in reversing the judgment (p. 751) : "It is urged by defendant's counsel, in his brief, that the plaintiff must have known that by this time the north-bound car was pretty close at hand and that the south-bound car might to some extent obstruct the view of the motorman of the north-bound car, so far as plaintiff's carriage was concerned, and that plaintiff said nothing to his driver but ran the risk of getting over before the car struck him. We are of the opinion that plaintiff did not satisfactorily establish his freedom from contributory negligence." It is a case where the coachman, driving, waited for a south-bound car to pass and then started to drive slowly across the tracks on Broadway, when the fore-part of the carriage was struck by an approaching north-bound

car. Plaintiff admitted that he saw the north-bound car rapidly approaching. His victoria then stopped for the south-bound car to pass, and he then allowed his driver to start over the tracks with the view somewhat obstructed by the south-bound car and without taking any precautions whatever to caution or warn the driver of the danger, and this was held to be negligence upon his own part which would defeat him, although the driver was also negligent in undertaking to cross the tracks without any effort to observe if a north-bound car was coming.

*Donnelly v. Brooklyn City Railroad Co.* 109 N. Y. 16, was a case where the plaintiff, with one McNally, had driven to the city of Brooklyn in the evening in a wagon drawn by one horse, with a load of fish for market. They started to return about midnight, taking the route of an avenue on which were two tracks of the defendant, upon which were run, either way, trains of cars drawn by dummy engines. The tracks were in the middle of the avenue, with sufficient width on either side for vehicles. McNally was driving, with plaintiff riding by his side. They had been driving on the right-hand railroad track, when, hearing a wagon approaching, they turned to the left and drove upon the other track, used by trains coming towards Brooklyn. While upon this track they saw and heard coming towards them in the distance a dummy engine. No effort seems to have been made by either of them to escape from the danger of collision. The plaintiff did nothing "except to sit on the wagon and shout twice to the engineer to hold up." He made no objection to McNally turning into the track where they were then driving, although acquainted with the avenue and the tracks, and apparently made no effort to get McNally to drive out of the track when he saw the dummy engine coming. A judgment which he obtained for his injuries was reversed. The Court of Appeals, speaking through Mr. Justice Gray, said that the case should not have been submitted to a jury. On page 22 of

the opinion the court said: "We think the plaintiff was chargeable with the neglect of his comrade. He was conscious of the danger and apparently made no objection or effort to avoid it. He was engaged in a common employment with McNally. He had full control of his own actions, and, though on the safe track, did not object when, after telling McNally to turn out, they turned upon the dangerous track. * * * After a careful consideration of this case we think, in view of the knowledge possessed by plaintiff and of his conduct at the time, that there was contributory negligence and he was not entitled to recover."

*Smith* v. *Maine Central Railroad Co.* 87 Me. 339, is directly in point. The plaintiff accepted an invitation from one Ryder to ride with him to a neighboring town. Ryder was driving. Smith had no more control over him nor over the team than anyone may be said to have riding by invitation in a buggy with another. They were injured in a collision while attempting to cross the defendant's tracks at a railroad crossing. There was a verdict in favor of the plaintiff. Under the practice in Maine the case reached the Supreme Court under a motion to set aside the verdict, where it was held that the verdict was not justified by the evidence and could not be permitted to stand. Among other things the court said, in speaking of the accident (p. 350): "It was undoubtedly caused, directly or proximately, by a want of due care and prudence on the part of the plaintiff himself. True, the plaintiff was not in control of the team as driver, but was riding by a friendly invitation from Ryder and without other compensation than his companionship. But the rule that the negligence of the driver is not to be imputed to his companion under such circumstances has very little application to the facts of this case. Plaintiff was occupying the same seat with Ryder, and had the same opportunity, and after they reached the defendant's main track probably a better opportunity, for discovering dangers. Before reaching the Bangor and

Aroostook track they conversed about the lights of the defendant's station, and after crossing stopped and had a further conference, at which they agreed in 'guessing that everything was all right.' It is obvious that the driver was ready and willing to act upon any information or suggestion from his companion. It is clear, also, that the plaintiff instinctively felt that there was a responsibility resting upon him as well as upon the driver. He knew that they were crossing railroad tracks, and was bound to know that a railroad track is itself a warning and a crossing a place of danger. He admits that when within fifty feet of the collision he voluntarily assumed the duties of a lookout. He saw the headlight, which Ryder does not appear to have seen, but did not mention the fact to Ryder. The horses were steady and well trained and would have promptly heeded the word to stop either from the plaintiff or the driver, but the plaintiff neither asked the driver to stop the horses nor to hurry them forward. His conduct was not that of a reasonably prudent man. It is the duty of the passenger, when he has the opportunity to do so, as well as of the driver, to learn of danger and avoid it if practicable. * * * In either view, the contributory negligence of the plaintiff is clearly established."

In *Bush* v. *Union Pacific Railroad Co.* 62 Kan. 709, (64 Pac. Rep. 624,) the plaintiff, a young lady, was invited by one Bowhay to ride with him on the evening of the accident. In attempting to cross the company's railroad tracks at a railroad crossing they were struck by a passenger train and she sued to recover for the injuries received. It will thus appear that she was merely an invited guest and that Bowhay was driving. At the close of the plaintiff's evidence the defendant demurred thereto, and the court sustained the demurrer and rendered judgment against the plaintiff for costs. On appeal this judgment was affirmed, and the plaintiff was held to have been guilty of such contributory negligence as defeated her right to

recover. In the course of the opinion it was said: "It is contended by plaintiff in error that if Bowhay was guilty of contributory negligence in driving upon the track without looking or listening for approaching trains such negligence is not imputable to the plaintiff in error. The want of care which resulted in injury to the plaintiff in error is chargeable to her. They were both engaged in a common purpose—mutual pleasure. Her opportunity and ability to see and appreciate the danger were equal to his. She was in no way relying upon him. It is true, he furnished the vehicle and did the driving, but she seems to have acted independently of him. When they started from the point where they had stopped for the freight train, she saw the track, knew they intended to cross it, appreciated the danger, and did not advise or suggest that they be more cautious, but did look for an approaching train, and was, in fact, the first to see it."

In *Illinois Central Railroad Co.* v. *McLeod,* 52 L. R. A. 954, (78 Miss. 334,) McLeod hired an open carriage, two horses and a driver to drive him to his desired destination and back again. In attempting to cross a railroad crossing he was injured in a collision between a train and the conveyance in which he was being driven. It was an open conveyance and McLeod had every opportunity the driver had to avoid the accident. He died from his injuries and suit was brought to recover for his death. A judgment was recovered, which the court reversed, saying, among other things (p. 956): "Mr. McLeod gave the driver no directions at all and in no way interfered with his management of the team. From the facts so put it is too plain for controversy that if the driver had been the party killed no court would have permitted recovery. Recognizing this palpably clear proposition, the effort of appellees is to put Mr. McLeod in a different category, on the theory that the driver's negligence cannot be imputed to him, since he was merely the hirer of the driver, the vehicle and the team.

But this doctrine cannot be stretched to save a case like this. It is a mistake to suppose that a passenger in an open buggy need not exercise the commonest prudence, the most ordinary care, when the danger of his surroundings is apparent. Ordinary and natural prudence requires him to take some action and to check or remonstrate with the driver.—*Dean* v. *Pennsylvania Railroad Co.* 129 Pa. 514; 6 L. R. A. 143; 18 Atl. Rep. 718; *Smith* v. *Maine Central Railroad Co.* 87 Me. 350; 32 Atl. Rep. 967, and the other authorities cited in the brief of counsel for appellant."

*Fechley* v. *Springfield Traction Co.* 96 S. W. Rep. 421, (119 Mo. App. 358,) is an interesting case, where all of the leading authorities are referred to. Fechley was injured by the collision of a street car with a buggy in which he was riding. It was a one-horse buggy belonging to a man named Pierce, and Pierce was driving. It was election day, and Pierce, who was interested in a candidate for sheriff and who had endeavored to induce Fechley to vote for his candidate, was driving Fechley to the north side of the city, having invited Fechley to ride over in his buggy to make him acquainted with the candidate. Fechley accepted the invitation and got into the buggy, and they were proceeding upon this errand when the collision occurred. There was a judgment for the defendant, which was affirmed. Among other things the court said, on page 423: "Appellant himself must have been free from negligence proximately contributing to his injury or he is entitled to no damages, granting that Pierce's fault does not preclude a recovery and that the motorman's fault was a factor in bringing about the casualty. Few, if any, courts have held that an occupant of a vehicle may entrust his safety absolutely to the driver of a vehicle, regardless of the imminence of danger or the visible lack of ordinary caution on the part of the driver to avoid harm. The law in this State and in most jurisdictions is, that if a passenger is aware of the danger and that the driver is remiss in guard-

ing against it and takes no care himself to avoid injury, he cannot recover for one he receives. This is the law, not because the driver's negligence is imputable to the passenger, but because the latter's own negligence proximately contributed to his damage.—*Marsh* v. *Railroad Co.* 104 Mo. App. 577; 78 S. W. Rep. 284; *Dean* v. *Railroad Co.* 129 Pa. 514; 18 Atl. Rep. 718; 6 L. R. A. 143; 15 Am. St. Rep. 733; *Township of Crescent* v. *Anderson,* 114 Pa. 643; 8 Atl. Rep. 379; 60 Am. Rep. 367; *Koehler* v. *Railroad Co.* 66 Hun, 566; 21 N. Y. Supp. 844; *Hoag* v. *Railroad Co.* 111 N. Y. 199; 18 N. E. Rep. 648; *Brickell* v. *Railroad Co.* 120 N. Y. 290; 24 N. E. Rep. 449; 17 Am. St. Rep. 648; 2 Thompson on Negligence, sec. 1621; Beach on Cont. Negligence, sec. 115; 3 Elliott on Railroads, sec. 1174." The court then proceeded to discuss the question of Fechley's contributory negligence, and further said (p. 424) : "Fechley was imprudent in doing nothing, personally, to insure his safety. The essential fact is that Pierce did not look in time, as Fechley knew or in reason ought to have known. Therefore Fechley should have stopped Pierce or told him to look for a car, or have looked himself, before they advanced so far into danger. It is palpable, from appellant's own testimony, that he was giving no heed to his safety, but either was relying blindly on Pierce, or for some reason was not aware of the proximity of the tracks."

In *Lake Shore and Michigan Southern Railway Co.* v. *Boyts,* 16 Ind. App. 640, Boyts was riding in a cutter with a friend named Hamilton, whose cutter it was, and who sat in the same seat with Boyts and was doing the driving. Boyts was injured through a collision with a railroad train while attempting to cross the company's tracks. A judgment in his favor was reversed, with instructions to enter a judgment in favor of the company. The following from the opinion is directly in point (p. 647) : "But even if the negligence of the driver (Hamilton) cannot be

imputed to the appellee,—and, as shown by the above cases, it cannot be,—the appellee must still show that he was free from negligence contributing to his injury. And the same rule would not apply where the guest was riding inside a closed carriage, without opportunity to discover danger and inform the driver of it, that would apply where the guest was seated at the driver's side and had the same opportunity with the driver to discover and avoid danger. (*Brickell* v. *New York Central and Hudson River Railroad Co.* 120 N. Y. 290.) Although he may be simply a guest, if he has the opportunity to do so it is no less his duty than it is the duty of the driver, when approaching a railroad crossing, 'to look and listen and to learn of danger and avoid it if practicable."

In *Miller* v. *Louisville, New Albany and Chicago Railway Co.* 128 Ind. 97, the intestate and her husband were riding along the highway in an ordinary farm wagon, with the husband driving and managing the team. Attempting to cross a railroad track they were struck by an approaching train and the intestate was killed. It appeared the negligence of her husband was made clear by the evidence, so that the question whether she could be charged with that negligence was directly involved, and if not, then whether she was herself guilty of such negligence as defeated the right to recover for his death. The court made mention of the fact that the doctrine of *Thorogood* v. *Bryan,* 8 C. B. 115, had never been sanctioned by that court, and among other things said (p. 99) : "Rejecting, as we do, the doctrine of imputed negligence, we are nevertheless required to hold that there can be no recovery in this action. We are led to this conclusion by the fact that the intestate was not shown to be free from contributory negligence. It has long been the settled law of this State that a plaintiff can not recover in such a case as this unless it affirmatively appears that his own negligence did not proximately contribute to his injury. * * * The intestate approached a

crossing known to her to be dangerous, and approached it when a train was in full view, and took no precautions to warn her husband or to avert the threatened danger, although slight care might have avoided it. While the husband's negligence is not to be imputed to her, she was, nevertheless, under a duty to herself to exercise ordinary care. The rule we adopt is laid down in the well reasoned case of *Brickell* v. *New York Central and Hudson River Railroad Co.* 120 N. Y. 290."

In *Brannen* v. *Kokomo Gravel Road Co.* 115 Ind. 115, the plaintiff, with several others, was riding in a wagon driven by one of the other occupants of the wagon. The driver, it appears, was intoxicated. As they approached a toll-gate owned by the defendant an attempt was made by the driver to drive rapidly through the gate to avoid payment of toll. The defendant had a pole so arranged that it could be thrown across the passageway through the gate to prohibit people from driving through, and the defendant's employee in charge of the gate attempted to stop the driver from driving through by dropping this pole, and in so doing the pole struck the front end of the wagon and the plaintiff was injured. The court held that the plaintiff could not be charged with the negligence of the driver but that he was chargeable with his own negligence, and that because of his own negligence he could not recover. The following is quoted (p. 118) from the opinion: "In the first place, the intoxication of the driver and his course in striking the young horses and attempting to run them through the gate without the payment of toll show, at least, that he was reckless and bold, if, indeed, he was not an unfit person to manage the team. In the second place, appellant must have known that toll was due and should be paid at the toll-gate. He knew, also, that no toll was paid or tendered before the attempt to pass the gate. There is nothing to show that he in any way remonstrated or objected to the course adopted by the driver to pass the gate

without the payment of toll. For aught that is shown in the special verdict, he was acquiescing in the purpose of the driver and all that he did in attempting to carry out that purpose. Having reached the conclusion that appellant is not shown to have been free from wrong or negligence which contributed to the injury, it must follow that he cannot recover."

In *Township of Crescent* v. *Anderson,* 114 Pa. St. 643, Mrs. Anderson was riding in a spring wagon, having with her three small children. Her father sat on the front seat and was driving. The seat on which Mrs. Anderson rode was fastened by a spring catch, so as to be removable at pleasure. When they reached a bridge in the highway it was found to be in the process of repair and could not be crossed. There was a space above the bridge wide enough to admit a wagon, and through this space McKinley, the father, drove to the other side. As the front wheels ascended the bank from the ravine through which they drove, one of the catches on the seat on which Mrs. Anderson rode sprang out, the seat turned over and she was precipitated into the ravine and injured. She and her husband sued the township and there was a judgment obtained, but the Supreme Court of Pennsylvania reversed it. Discussing the negligence of Mrs. Anderson herself,—and that was what defeated her,—the court said (p. 646): "She came to the bridge in daytime, about eleven o'clock in the morning, and she could see plainly that the route around the bridge was not prepared for the passage of vehicles. The ravine, its approaches, its depth and width were all fully exposed to view. There was no water in it. There was no latent defect or danger. If it was a dangerous place she could as readily discern the fact as her father or the supervisor, and it was her duty to see what was clearly exposed to her view. Under the noting of *Carlisle* v. *Brisbane,* 18 W. N. C. 220, (3 Ammerman, 544,) the negligence of McKinley could not, perhaps, be imputed to her,

but she must be held for her own negligence. The danger which was obvious to him was as obvious to her. She made no request of her father to take any other route, so that she might get out of the wagon. She made no objection to crossing the ravine. She willingly joined McKinley in testing the danger, and she is responsible for the consequences of her own act."

In *Dean* v. *Pennsylvania Railroad Co.* 6 L. R. A. 143, (129 Pa. St. 514,) Dean, while crossing the tracks of the defendant company in a wagon, was struck by a locomotive and injured. Fields was the owner of the horse and wagon and was driving. Under the evidence the negligence of Fields was clear. The court so held, and then inquired, "But can the negligence of Fields be imputed to Dean?" There then followed a somewhat extended analysis of the authorities holding that Dean was not chargeable with the negligence of Fields, when the court, taking up directly the question whether Dean was guilty of negligence, concluded (p. 145) : "Dean knew the locality well. He had crossed the tracks frequently at this point. He knew that a train was due about that time and that he was approaching the railroad track at a fast trot, yet he took no precautions. He was certainly responsible for his own negligence. He sat with his back to the driver, and although he might have seen his danger, he confesses that he did not look. He said nothing by way of warning to Fields, nor did he ask him to stop, to look and listen or to permit him (Dean) to get out, and the danger was as obvious to Dean as it was to Fields. The testimony is wholly to the effect that the plaintiff committed himself voluntarily to the action of Fields; that he joined him in testing the danger, and he is responsible for his own act. The case is ruled by *Township of Crescent* v. *Anderson*, 114 Pa. 643; 6 Cent. Rep. 616." A judgment of non-suit entered by the lower court was affirmed.

We have not been able, in the course of our research, to find, neither have counsel pointed out, any case decided by this court where this precise question has been considered. It is clearly, however, we think, the law of this State that under conditions such as are presented here the negligence of Cox will not be imputed to Flynn. But, as was said at the outset, Flynn is not sought to be charged with the negligence of Cox but with his own negligence, and that he may be so charged is abundantly sustained by these authorities. Flynn knew the whole situation as it existed. He joined Cox and White in testing the danger of driving along that street, whether east or west, at that time of night without a light upon the buggy. The plaintiff in error had a right to show the jury the conditions under which the buggy was being driven, and one of the things which the jury had the right to know, and which the plaintiff in error was entitled to prove, was that the buggy was being driven upon the streets of Chicago in the night time in violation of an ordinance of the city, which was negligence *per se*. The plaintiff in error's fourth refused instruction reads as follows:

"If you believe, from the evidence, that the plaintiff, by using his faculties with ordinary and reasonable care in looking out for danger, could have avoided injury on the occasion in question, and that he negligently failed to do so and thereby contributed to the injury, if you believe he was injured, then he cannot recover in this case."

This instruction stated a correct proposition of law, and as the principle therein contained was not covered by any given instruction, we think its refusal constituted reversible error. The principle of this instruction was approved in *Chicago City Railway Co. v. O'Donnell*, 208 Ill. 267.

The judgments of the superior and Appellate Courts will be reversed and the cause will be remanded to the superior court for a new trial.

*Reversed and remanded.*