(No. 19292.— )

IRVING GREENWALD, Appellant, *vs.* THE BALTIMORE AND
OHIO RAILROAD COMPANY, Appellee.

*Opinion filed December 20, 1928.*

PEDEN, KAHN & MURPHY, (GERALD RYAN, FRANK E.
GETTLEMAN, and DAVID SILBERT, of counsel,) for appellant.

CHARLES D. CLARK, and HENRY D. SHEEAN, for ap-
pellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause comes on appeal by certificate of importance
from the Appellate Court for the First District to re-
verse the judgment of that court affirming a judgment of
*nil capiat* entered by the superior court of Cook county
against appellant. The action is for damages to appellant's

automobile truck, caused by a collision with a train of appellee. At the close of appellant's case on the trial, the court, on motion of appellee, instructed the jury to find the issues for the defendant. The one issue involved in this case is whether the court erred in so instructing the jury.

The declaration contains four counts and two additional counts. The first count charges negligence in the operation of the defendant's train. The second count charges the failure to ring a bell or blow a whistle, as required by statute. The third count charges violation of the Fencing statute. This count was not pressed on the trial. The fourth count charges the operation of a train at an excessive rate of speed. The first additional count charges that by reason of the fact that the tracks at the place of the accident are in a closely built-up residential portion of the city, making it difficult to see trains approaching the intersection, it became defendant's duty to drive at a reasonable rate of speed considering such surroundings, but, notwithstanding, defendant drove its train over said intersection at the rate of from thirty-five to forty miles per hour. The second additional count describes the surroundings as in the first additional count and charges the duty of defendant to exercise reasonable watch and observation for the presence of vehicles on the highway, but that it neglected to do so and the collision resulted from such neglect. All counts of the declaration allege that plaintiff's servants were in the exercise of due care and caution for the safety of plaintiff's property.

The collision occurred at about eleven o'clock on the morning of January 15, 1926, at the intersection of appellee's tracks and Manistee avenue, in the city of Chicago. Manistee avenue extends north and south while the tracks of appellee at this point extend northwest and southeast, at what was characterized in the evidence as a sharp angle. The defendant's line at that point consists of four tracks laid on a grade about four or five feet above the general

street level. The level of Manistee avenue rises for a distance of 31 feet on the south side of appellee's tracks. Appellant's servants, the driver of the truck and a helper, were proceeding north on Manistee avenue with a truck and had crossed the southerly track and the one next north of it and were on the first rail of the third track from the south when struck by a train of appellee traveling northwest. As the train struck the truck the driver of the latter was in the act of turning it in a northwesterly direction, so that the train struck the rear of the driver's cab on the truck, throwing it a distance of approximately 150 feet and damaging the truck. This suit was filed to recover such damages.

On the east side of Manistee avenue, and on the right of one approaching the crossing from the south, is located a two-story residence of one Tasso. The evidence shows that this residence was 50 or 60 feet south of the railroad track at that point. A garage was located in the back of this lot and about 10 feet north of the north line of the house, bringing it within seven or eight feet of the first or south track of the railroad. A cement-block factory, consisting of a small frame structure about 12 feet in height, had been built about 125 feet southeast of the crossing, on the southerly side of appellee's railroad tracks and about four or five feet from the south or first track.

Appellant's witness Gus Graziano, driver of the truck, testified that the Tasso residence was about 60 feet south of the tracks, on the east side of Manistee avenue; that as witness was going north on Manistee avenue he approached the incline to appellee's tracks at a rate of about twelve miles per hour; that he then threw the motor into second speed and looked to the right to see if anything was coming; that as he passed the house he could see 100 feet southeast along the tracks to the garage and about 25 feet further; that as he came to the first rail of the south track he looked to the east and saw nothing except some flat-cars

on the first track, down by the cement factory; that he saw no train on the third track; that he had reduced the speed to about five miles an hour; that there was no whistle blown or bell rung as he came over the first and second tracks; that just as he passed the second track his helper shouted that a train was coming, and he then heard the engineer blow a whistle and he turned his steering wheel to the left. On cross-examination he testified that when on the first track he looked southeast and saw nothing on either the second or third track; that he could then see about 200 feet up the third track at that point; that the first track was 30 feet from the track on which he was struck. He does not testify that he looked east after crossing the first track until his helper called his attention to the train, and he testified it was then about 30 feet away.

Joseph Baker, appellant's helper, was on the truck at the time of the collision. He sat on the right side of the seat in the cab of the truck while Graziano sat on the left side. He testified that you could see 60 or 70 feet down the track when you reached the north line of Tasso's house. The garage came into view before you came to the first rail, but when you got to the top of the incline at the first track you could see from 70 to 100 feet southeast. He testified that when they came to the incline leading onto the tracks both he and the driver looked east; that the driver slowed down to four or five miles an hour; that they both looked east going up the incline and could see 80 feet and no trains were in view; that after crossing the first rail he looked to the northwest, and when they were crossing the second track he saw the train coming from the southeast about 60 or 70 feet from Manistee avenue; that he called to the driver, who attempted to turn the truck away from the third track, on which the train was running; that the engineer blew the whistle just before the train struck them. Witness and Graziano both testified the train was going thirty-five or forty miles per hour. On cross-examination

Baker testified that he did not look southeast after they were on the first track until they were crossing the second track. He states that on crossing the second track one could see about a block southeast, and that standing between the rails of the first track you could see a block or so.

Thomas Tasso testified that on the date of the accident he was living in the house herein referred to as the Tasso residence; that at the time of the collision he was in an up-stairs room, reading a paper by the north window; that he happened to look out and saw a train going by 30 or 35 miles an hour toward the intersection of Manistee avenue; that the train was going northwest on the third track; that he heard the train when it was about one-half block from the crossing, and saw the train strike the truck.

Ted Miller, also a witness for appellant, testified he was driving north on Manistee avenue about 60 or 70 feet in the rear of appellant's truck when it reached the incline south of the railroad track. His testimony was that when you reach a point opposite the north line of the garage on the Tasso lot you can see about 180 feet to the southeast. He did not say whether that distance referred to the first, second or third track. He testified that he did not hear a whistle. He saw the train strike the truck when the latter was on the third track. The train was going about thirty-five miles an hour. He testified that there were some flat-cars standing on the first track and southeast of the crossing at the time. On cross-examination he testified that "on the first track you can see practically all the way down, and that is about 40 feet from the third track."

The rule has long been settled in this State that it is the duty of persons about to cross a railroad track to look about them and see if there is danger, and not to go recklessly upon the track but to take proper precaution to avoid accident. It is generally recognized that railroad crossings are dangerous places, and one crossing the same must approach the track with the amount of care commensurate

with the known danger, and when a traveler on a public highway fails to use ordinary precaution while driving over a railroad crossing, the general knowledge and experience of mankind condemns such conduct as negligence. (*Graham* v. *Hagmann,* 270 Ill. 252; *Lake Shore and Michigan Southern Railroad Co.* v. *Hart,* 87 id. 529; *Chicago, Burlington and Quincy Railroad Co.* v. *Damerell,* 81 id. 450; *Toledo, Wabash and Western Railway Co.* v. *Jones,* 76 id. 311.) One who has an unobstructed view of an approaching train is not justified in closing his eyes or failing to look, or in crossing a railroad track in reliance upon the assumption that a bell will be rung or a whistle sounded. No one can assume that there will not be a violation of the law or negligence of others and then offer such assumption as an excuse for failure to exercise care. The law will not tolerate the absurdity of allowing a person to testify that he looked but did not see the train when the view was not obstructed, and where, if he had properly exercised his sight, he must have seen it. (*Schlauder* v. *Chicago and Southern Traction Co.* 253 Ill. 154.) The question of due care on the part of a plaintiff is a question for the jury when there is any evidence given on the trial which, with any legitimate inference that may be legally and justifiably drawn therefrom, tends to show the use of due care, but where the evidence, with all legitimate inferences that may be legally and justifiably drawn therefrom, does not tend to show due care on the part of plaintiff the trial court is justified in instructing the jury to return a verdict for defendant. In this case it seems clear from the testimony of appellant's witnesses, taken in its most favorable light, that appellant's agents, had they continued to look toward the southeast after going upon the tracks, would have seen the approaching train in ample time to have avoided the collision. Appellant's evidence most favorable to him is, that when standing on the first or south track, which the testimony

shows is from 30 to 40 feet south of the third track, on which the collision occurred, one can see at least 200 feet in the direction from which the train was approaching. Neither of appellant's servants testified that after going upon the first or south track they again looked toward the southeast until they were crossing the second track. It seems clear that had they done so the collision would have been avoided. They testify that they heard no sound of warning, such as the blowing of a whistle or ringing of a bell. The duty resting upon one who crosses a railroad track is not only to listen but to look, and the fact that no bell was rung or whistle blown, if such was the fact, would not excuse him from using due care to look in the direction from which a train might be coming, and in this case had appellant's servants done so it seems clear that the collision would have been avoided.

Appellant complains that the Appellate Court cited as controlling authority the case of *Baltimore and Ohio Railroad Co.* v. *Goodman,* 48 Sup. Ct. 24, and other cases, as binding in this case, and argues that such cases do not state the rule obtaining in this State. This court reviews the judgment of the Appellate Court and not the reasons given therefor, and under the rule in this State, as hereinbefore stated, we are convinced that appellant's evidence does not show due care on the part of his servants in crossing the tracks. The superior court therefore did not err in instructing the jury to return a verdict for the defendant and the Appellate Court did not err in affirming that judgment.

The judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*