J. V. Niederle, Plaintiff in Error, v. Chicago Rapid
Transit Company, Defendant in Error.

Gen. No. 35,048.

348

Opin-
ion filed January 20, 1932.

WILLIAM A. CUNNEA, C. HELMER JOHNSON and JOHN ALDEN RYAN, for plaintiff in error.

GARDNER, FOOTE, BURNS & MORROW, for defendant in error; WALTER M. FOWLER, of counsel.

MR. JUSTICE WILSON delivered the opinion of the court.

The plaintiff, J. V. Niederle, brought his action in the superior court to recover damages for injuries sustained by reason of a collision between an automobile, in which he was riding as a passenger, and a train of the Chicago Rapid Transit Company, defendant. The trial resulted in a verdict of the jury in favor of defendant and judgment on the verdict.

The second amended declaration consisted of six counts. The first count charged the defendant generally with negligence in the management, operation and control of the train; the second is double and charged the defendant with operating its train at a high rate of speed and neglecting to provide the train with good and sufficient brakes; the third count charged the defendant with negligently failing to give proper warning of the approach of its train; the fourth count charged the defendant with failure to provide a sufficient headlight on its train; the fifth count charges the defendant with negligently failing to maintain signal bells in working order or gates at the crossing where the accident happened; the sixth count charged the defendant with having failed to sound a whistle, bell or gong as the train approached the crossing in question.

The accident happened in the City of Chicago at the intersection of a street known as 47th Court, and the right of way of the defendant at about 2:30 a. m. on the morning of December 18, 1927. The trains of the defendant were operated over its own right of way and guarding this right of way was a wire fence on either side except where the trains crossed intersect-

ing streets. There were two tracks, one of which was eastbound and the other westbound. On the west side of 47th Court and between the defendant's tracks was a danger sign and an electric bell. There was also a cluster of lights on a pole situated on the west side of the street and south of defendant's tracks was an ordinary railroad crossing sign. The electric bell and red light were started in operation by the approach of the train when it reached a certain "cut-in" over 800 feet east of the east line of 47th Court. Forty-seventh Court was a paved street and the distance from curb to curb was 30 feet. At the time of the accident, the automobile in which plaintiff was riding was going south on 47th Court over the railroad crossing and the defendant's train was a westbound train.

The testimony of the witnesses as to the speed of the train varied, some placing it as high as 40 miles an hour and others at 20 miles an hour. The train was electrically operated and the motorman testified that he had stopped at the station just east of 47th Court and that it would have been impossible to have attained a speed of more than 25 miles an hour before he reached 47th Court. The evidence also discloses that the train made a regular stop at the 48th avenue platform, on which platform one of the witnesses for the defendant was waiting to board it.

From a photograph introduced in evidence by defendant and marked defendant's Exhibit 11, it appears that a person standing four feet east of the west curb of 47th Court and 10 feet north of the north rail of the westbound track could see a person standing in the center of the westbound track 287 feet east of the east curb of the said 47th Court.

From the facts it appears that the plaintiff on the night of the accident, together with a number of other persons, was attending a meeting at the building located at the northeast corner of 47th Court and the right of way of defendant's tracks. This meeting was

called for the purpose of arranging a trip to Czecho-Slovakia. The building was a two-story brick building and the meeting was held in a cafeteria located therein. The meeting remained in session until about 2:30 o'clock in the morning and at that time a man by the name of Kubec invited the plaintiff, together with a Mr. and Mrs. Bukovsky and a Mr. Jones, to ride home with him. A number of cars were parked immediately in front of the building along the east side of the street and when Kubec and those who were riding with him in his machine left the building, they proceeded south to the railroad track and then crossed over to where Kubec's car was located on the west side of 47th Court. The car was parked from 15 to 20 feet north of the defendant's westbound track and evidently headed south. Kubec and Jones sat in the front seat with Kubec on the left and Jones on the right. The two Bukovskys and the plaintiff sat in the rear seat, with the plaintiff on the left or east side of the automobile. The machine had to move only 15 or 20 feet before it was on the westbound track of the defendant. It made no stop after having started until it was struck by the train. There was no watchman at the crossing after 12 o'clock at night. Forty-seventh Court was not a through street and about a block south of the right of way of the defendant company, and in the direction in which the plaintiff was driving, was located the plant of the Western Electric Company, which extended across the entire width of the street. There appears to have been very little traffic on this street after midnight.

Plaintiff's witness Jones testified that he did not hear any signal or see any danger light, but saw a red light which was burning steadily on the west side of the street.

Conlon, the electrician for the defendant, testified that there was no permanent red light, but only the red danger signal which was operated automatically when the train crossed the "cut-in."

Jones and the two Bukovskys as well as the plaintiff who was riding in the machine, testified that they heard no bell ringing or whistle sounded. Some of plaintiff's witnesses testified that they saw no red danger light. On the other hand, one Prazak, an employee of the defendant, who was waiting at the 48th avenue station, just south of the crossing, testified that he heard the crossing bell ringing.

Kern, a witness on behalf of the defendant and employed by the Western Electric Company, testified that he was in the station house at 48th avenue and heard the bells at 47th Court crossing ringing.

A number of employees of the defendant testified that they examined the mechanism shortly after the accident and found that it was in good condition and that the bell would ring and the danger signal show when a train crossed over the ''cut-in'' going west.

The testimony of the plaintiff's witnesses was negative in its character, while that of the defendant's was positive as to the ringing of the bell and the showing of the red danger signal. There was no haze, fog or steam which would obstruct the view of anyone so as to prevent a view of the oncoming train. The only obstruction was the building located at the corner of 47th Court and the right of way of the defendant company. Plaintiff, as well as the driver of the motor car, was fully aware of the fact that the railroad crossing was only 15 or 20 feet from the car at the time they entered it. If the building prevented their view of an oncoming train, it was only necessary to move 10 feet nearer the crossing in order to have obtained a view of the train. This train in addition to being equipped with a headlight, was electrically lighted throughout. Testimony as to the danger signal and the ringing of the bell was conflicting and the jury was amply warranted in returning the verdict which it did in favor of the defendant. A railroad crossing is a dangerous

place, and a driver approaching such a place should not, in the exercise of ordinary care, rely entirely upon the signals.

The Supreme Court of this State in the case of *Flynn v. Chicago City Ry. Co.*, 250 Ill. 460, in its opinion says:

"The general rule in this class of cases is, that the burden of establishing, affirmatively, freedom from contributory negligence is upon the plaintiff, or, in the language of the opinion in *Tolman v. S. B. & N. Y. R. R. Co.*, 98 N. Y. 202, that 'plaintiff approached the crossing where the collision and injury occurred, with prudence and care and with senses alert to the possibility of approaching danger.' And this rule obtains even where the railroad company neglects to ring its bell or sound its whistle, as required when its trains approach a crossing. (*Cullen v. D. & H. C. Co.*, 113 N. Y. 688.)"

The Supreme Court in the case of *Gills v. New York, C. & St. L. R. R. Co.*, 342 Ill. 455, lays down the rule:

"The Supreme Court of the United States in *Baltimore and Ohio Railroad Co. v. Goodman*, 275 U. S. 66, laid down the rule that when a man goes on a railroad track he knows he goes to a dangerous place, and if he cannot otherwise be sure of the approach of a train he must get out of his vehicle and walk ahead and look. If he does not do so he is crossing at his own risk. This court held in *Greenwald v. Baltimore and Ohio Railroad Co.*, 332 Ill. 627, that one who has an unobstructed view of an approaching train is not justified in failing to look or in crossing the railroad track relying upon the sounding of a bell or whistle; that where the view is not obstructed the law will not tolerate the absurdity of allowing a person to testify he looked but did not see the train, if by the proper exercise of sight he could have seen it; that the question of due care on the part of the plain-

tiff is one for the jury when there is any evidence given on the trial which, with any legitimate inference that may be legally and justifiably drawn therefrom, tends to show the use of due care, but where the evidence, with all legitimate inferences that may be legally and justifiably drawn therefrom, does not tend to show due care on the part of the plaintiff, the trial court is justified in instructing the jury to return a verdict for defendant.''

Quoting from *Greenwald v. Baltimore & Ohio R. Co.,* 332 Ill. 627:

''The duty resting upon one who crosses a railroad track is not only to listen but to look, and the fact that no bell was rung or whistle blown, if such was the fact, would not excuse him from using due care to look in the direction from which a train might be coming, and in this case had appellant's servants done so it seems clear that the collision would have been avoided.''

The plaintiff was a passenger in the automobile and if he had an opportunity to learn of the danger and to avoid it, it was his duty to warn the driver and the fact that he was not driving did not relieve him of the duty of exercising reasonable care to have avoided the accident. *Dee v. City of Peru,* 343 Ill. 36, citing *Pienta v. Chicago City Ry. Co.,* 284 Ill. 246; *Flynn v. Chicago City Ry. Co.,* 250 Ill. 460; *Hoag v. New York Central and Hudson River R. Co.,* 111 N. Y. 199.

The question as to whether or not the defendant was negligent in the operation of its train and in providing necessary warning signals at the crossings, together with the question as to whether the plaintiff was exercising ordinary care for his own safety at and just prior to the time of the accident, was a question for the jury. By its verdict the jury found the issues in favor of the defendant and we see no reason for changing the verdict and judgment upon the facts in the case.

Plaintiff contends that the court erred in permitting the defendant to introduce in evidence a certain statement contained in plaintiff's first amended declaration, —the statement follows: ". . . and the defendant, Frank Kubec, saw, or in the exercise of ordinary care should have seen said electric car or train as it approached said intersection." Plaintiff's objection is based upon the ground that only part of the original declaration was offered and further that the evidence was incompetent. As to the first ground, it is the rule that where one party introduces part of a document or writing, the other side has the right to introduce the whole document or instrument. As to the position taken that the evidence was incompetent, it appears that Kubec, the driver of the automobile in question, had been made a party defendant to the original action but had subsequently died and was dismissed out of the proceeding.

Counsel for defendant cites the case of *Wenegar v. Bollenbach*, 180 Ill. 222, but from a reading of this case it appears that the pleading was drawn several months after the client had stated the facts to his attorney and subsequently complained to his attorney that he had not set out the facts correctly in the bill. There is no such evidence of any protest by the plaintiff in this proceeding. On the other hand, in the case of *Linn v. Clark*, 295 Ill. 22, the court held that such a bill when filed by a solicitor for one of the parties was competent, as it would necessarily be presumed that the statements contained in such a pleading were based upon information furnished by the client. The court in its opinion says:

"The defendants objected to the admission of the original bill in evidence. The bill was not signed by Clark and there is no evidence that he saw it or was acquainted in detail with its allegations before it was filed, but it was filed by his solicitor, presumably after consultation with him, and parties to causes are pre-

sumed to know the contents of the pleadings filed by them. The bill was admissible in evidence, and its effect as evidence must be determined from the circumstances under which it was made. It was filed three months after Clark had left for California, and it is not an unreasonable inference that it was prepared by his solicitor in his absence, in reliance as well upon the memorandum of agreement between Muir and Clark as on the solicitor's recollection of his client's statements.'' To the same effect see *Allen v. United States Fidelity & Guaranty Co.*, 269 Ill. 234; *Bartlow v. Chicago, B. & Q. R. Co.*, 243 Ill. 332; *Stevenson v. Avery Coal and Mining Co.*, 143 Ill. App. 397.

Plaintiff objects to the giving of instruction number 11 on behalf of the defendant, on the ground that it is a peremptory instruction directing a verdict of not guilty. This instruction directed the jury that if they believed that the plaintiff, while riding in the automobile in question as the same was approaching and about to go upon the railroad track in question, did not exercise that degree of care which an ordinarily prudent and careful person, acting prudently, would have exercised under the same circumstances as shown by the evidence in this case, then he was guilty of contributory negligence. The objection is based upon the ground that the contributory negligence, if any, must be such negligence on the part of the plaintiff as proximately contributed to the injury. The instruction itself places the time at which the plaintiff should exercise due care at that time at which the plaintiff was approaching and about to go upon the track. In our opinion the word ''proximately'' would have added nothing to the instruction. We do not believe that the jury could have been misled by the instruction or that it would have been more enlightened by the word ''proximately.''

Objection is also made to instructions numbers 12 and 13, given on behalf of defendant, on the ground that they are peremptory in that they directed a verdict of not guilty. Instruction 12 does not direct a verdict, but informs the jury that if it believed that the failure of the plaintiff to do certain things was negligence, then it should find the defendant not guilty. In other words, the jury had to find certain facts before it could return a verdict in favor of the defendant. The effect of these instructions was that if the plaintiff, before the car in which he was riding went upon the tracks of the defendant, had an opportunity to observe the approach of the train and failed to warn the driver, and in that regard he was negligent, then he could not recover. While this is an abstract proposition of law, nevertheless, it is correct, and it still left the question to the jury as to whether or not the plaintiff was guilty of contributory negligence under such circumstances. We do not believe that the giving of these instructions constituted reversible error as should call for a reversal of the cause.

It is insisted on behalf of the defendant that under the circumstances the trial court should have directed a verdict in favor of the defendant. We are of the opinion that there was ample evidence to sustain the verdict in favor of the defendant and it is, therefore, unnecessary to discuss this question.

For the reasons stated in this opinion, the judgment of the superior court is affirmed.

*Judgment affirmed.*

HEBEL, P. J., and FRIEND, J., concur.