Tressea Reed, Administratrix of Estate of Raymond Detloff, Deceased, Appellant, v. Roland Lyford, Appellee.

Gen. No. 9,688.

Heard in this court at the May term, 1941. Opinion filed August 14, 1941. Rehearing denied October 7, 1941 and modified opinion filed October 21, 1941.

B. JAY KNIGHT and FREDERICK H. HAYE, both of Rockford, and OSCAR W. INGRAM, of Beloit, for appellant.

RYAN & HOOD, of Rockford, for appellee.

Mr. Justice Huffman delivered the opinion of the court.

Appellant's intestate lost his life when appellee's automobile collided with the side of a coal tender attached to a railroad engine. Appellee was driving the car. The deceased was riding in the front seat with him. Lester Morris was riding alone in the back seat. The accident happened shortly after eleven o'clock on the night of October 21, 1939. The concrete highway was dry, straight and free from obstruction. The jury returned a verdict for the appellant in the sum of $1,800. Appellee filed a motion for a new trial, and a motion for judgment notwithstanding the verdict. After the filing of these two motions, appellee withdrew his motion for a new trial, and left standing before the court for its consideration only the motion for judgment notwithstanding the verdict. The court granted this motion, and entered judgment for appellee notwithstanding the verdict. Appellant brings this appeal therefrom.

It is the position of appellee that a passenger in an automobile which is approaching a railroad crossing, if he has an opportunity to learn of danger, is charged with the duty of warning the driver. *Niederle v. Chicago Rapid Transit Co.*, 264 Ill. App. 347; *Morgan v. Rockford B. & J. Ry. Co.*, 251 Ill. App. 127; and further, that the deceased and appellee were guilty of willful and wanton misconduct to the same degree, and therefore, appellant could have no recovery, citing in this respect, the case of *Willgeroth v. Maddox*, 281 Ill. App. 480.

Appellee was called as an adverse witness, under section 60 of the Practice Act. He testified that he was 34 years of age; that he had been accustomed to driving over this highway for 12 years; that he knew these tracks were there; that the headlights of his car were turned on and in good shape; that the brakes were in good working order; that the deceased was in

the front seat with him, and Morris was in the back seat; that he was driving the car; that he could see the tracks for a quarter of a mile before he reached them; that upon approaching the tracks he looked in both directions for trains; that he did not see anything; that he did not see the engine and tender that was on this switch track and across the highway; that he was traveling about 30 or 35 miles per hour, and since he did not see anything to obstruct his travel, he kept right on going. He further testified that the handle or lever which controlled the emergency brake was located between him and the deceased; that he did not apply the emergency brake; that he was looking straight ahead, but never saw the train; that he was told his car struck the back end of the engine; that he did not see the deceased after the collision, and that he did not see the engine and coal tender until after the collision; that he did nothing to avoid the collison because he did not know the train was there; that the deceased was sitting where he could apply the emergency brake; that he was looking for a train as he approached the main track but saw none; that the switch track is about 100 feet beyond the main track; that the switch engine and coal tender were on the switch track, and he was not expecting a train there; that he saw no other automobiles on the highway; that his lights were burning at all times, and that there was nothing to obstruct his vision.

Lester Morris testified that the pavement was dry; that he knew the main track and switch track were located at the places in question; that he did not apply the emergency brake; that the lights on appellee's car were burning; that the road was straight as it approached the crossing in question; and that no automobiles were approaching or following appellee's car. He estimates the speed to have been about 35 or 40 miles per hour. He does not know whether the emergency brake was applied before the collision. The only

thing he remembers about the accident is that he opened his eyes and saw the train. He states that appellee's car turned neither to the right nor left before the collision.

The headlight on the engine was burning. Skid marks were on the pavement from the place of impact between the car and engine, running back a distance of about 25 feet. Following the accident, a chain was hooked to the automobile and attached to the engine and the car pulled from off the pavement to the side of the highway where it turned over. The garage mechanic who arrived at the scene of the accident about one and a half hours afterwards, found the car overturned at the side of the road where the engine had pulled it. He further found the emergency brake set so tightly that he could not release it in the ordinary manner.

Appellee and Morris were together at a tavern on the evening in question. They had been there about an hour when the deceased came in, about 10:30. The three of them left the tavern in appellee's car at about 11:00 p.m.

The foregoing is a brief summary of the evidence on the part of plaintiff below. We find from appellee's testimony that the pavement was straight and level, and the view unobstructed. He says he looked for a train on the main track, and saw nothing. He proceeded forward to a point about 100 feet beyond the main track where he collided with the switch engine which was upon the switch track. The law charges a person with the duty of seeing that which is clearly visible and within range of vision. *Greenwald v. Baltimore & O. R. Co.*, 332 Ill. 627, 632; *Dee v. City of Peru*, 343 Ill. 36.

"A motion to direct a verdict for the defendant preserves for review only a question of law whether from the evidence in favor of the plaintiff, standing alone and when considered to be true, together with all the

inferences which may legitimately be drawn therefrom, the jury might reasonably have found for the plaintiff.'' *Ziraldo v. W. J. Lynch Co.*, 365 Ill. 197, 199; *Fewkes v. Borah*, 376 Ill. 596, 35 N. E. (2d) 69. The same rule applies with respect to motions for judgments *non obstante veredicto*. *LeMenager v. Northwestern Steel & Wire Co.*, 301 Ill. App. 260. Upon such a motion, the question is, whether there is any evidence in the case which, if true, tends to prove the plaintiff's cause of action. The court can not weigh the evidence of one party as against the other. Under the state of the record, we are of the opinion the trial court erred in granting appellee's motion for judgment *non obstante veredicto*. The facts and circumstances in this case differ substantially from those in the *Willgeroth* case, *supra*. Since no motion for a new trial is pending in the case, the judgment is reversed, and the cause remanded with directions to the trial court to entertain a motion for a new trial, if such be made, and for further proceedings consonant with the law.

*Opinion modified as above.*