HENRY B. BALE, Admr., Defendant in Error, *vs.* THE CHICAGO JUNCTION RAILWAY COMPANY, Plaintiff in Error.

*Opinion filed June 18, 1913—Rehearing denied October 15, 1913.*

1. NEGLIGENCE—*when absence of a flagman at crossing is not material.* Failure to have a flagman at a crossing to give warning of the approach of a train is not material, where the person struck by the train had received warning of its approach from track laborers and knew that it was coming.

2. SAME—*unimpeached and uncontradicted testimony given through interpreter cannot be rejected.* The fact that track laborers who warned plaintiff's intestate of the approach of the train which struck and killed him were foreigners, who gave their testimony through an interpreter, does not authorize the jury to disregard their uncontradicted and unimpeached testimony that they called to the deceased and warned him of his danger, and that he looked toward the train, waved his hand to them, called out something and went on.

3. TRIAL—*when improper argument to jury will reverse though the court sustained objections.* Where the argument of plaintiff's counsel to the jury is an impassioned appeal to the sympathy and emotions of the jury, and is willfully persisted in for the deliberate purpose of exciting prejudice against the defendant and sympathy for the plaintiff after the court has repeatedly sustained objections thereto, the improper argument may itself justify a reversal of the judgment rendered.

4. INSTRUCTIONS—*when instruction is erroneous.* If the allegation of due care in one count is limited to the time the injured person was in the place where he was struck by defendant's train, but the defendant contends that such person was guilty of negligence in putting himself in such place when he knew the train was approaching, an instruction is erroneous which authorizes a verdict if the jury believe, from a preponderance of the evidence, that the plaintiff has established his case as alleged in any count of the declaration.

CARTER, FARMER and VICKERS, JJ., specially concurring.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.

WINSTON, PAYNE, STRAWN & SHAW, (JOHN BARTON PAYNE, JOHN D. BLACK, and JOHN C. SLADE, of counsel,) for plaintiff in error.

I. W. BAKER, and C. E. HECKLER, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The defendant in error recovered a judgment against the plaintiff in error for the death of his intestate, James Dunworth. The Appellate Court affirmed the judgment and its record is now before us for review. A reversal is asked because the deceased was guilty of contributory negligence without which the accident would not have happened, the plaintiff's counsel made improper statements in his argument, and the court gave an erroneous instruction.

The accident happened about two o'clock of a bright, clear day in February, at the crossing of Wallace street, running north and south, and the railroad tracks, running east and west and occupying the space which would have been Fortieth street if it had not been so occupied. The plaintiff in error had five tracks there, over which were operated the trains of a number of railroads,—perhaps ten altogether,—engaged in hauling freight to and from the Union Stock Yards. The Lake Shore and Michigan Southern Railway Company also operated suburban passenger trains over these tracks. The crossing was at grade but the railroad tracks were being elevated east of the street, the grade beginning about the east side of the street and rising to a point from 250 to 500 feet east of the street and then falling to grade at a point about 1000 feet east of Wallace street. The third of the tracks (counting from the north) crossing Wallace street was the west-bound main track, the fourth the east-bound main track. Just before the accident an Illinois Central freight train going east on the east-bound main track had broken in two about seven

car lengths from the rear, leaving four or five cars west of
Wallace street. The crossing was blocked for about ten
minutes, when the two parts of the train were coupled together and the train again started east. Mr. Dunworth and
his wife came from the north, south on Wallace street,
crossed the first three tracks, and were standing between
the east-bound and west-bound main tracks, waiting for the
moving freight train to clear the crossing so that they might
proceed, when a Lake Shore and Michigan Southern suburban train came from the east on the west-bound track.
The space between the north rail of the east-bound track
and the south rail of the west-bound track was only eight
feet, which was reduced by the overhang of the cars on
either track, and Mr. Dunworth, occupying this narrow
space between the two moving trains, was thrown beneath
the suburban train and killed.

The three counts in the declaration on which the trial
was had charged general negligence in the operation of
rolling stock at the crossing, failure to guard the crossing,
and failure to maintain a flagman, as required by an ordinance of the city. The negligence of the plaintiff in error
is not contested here, but it is insisted that a peremptory
instruction should have been given to find for the defendant because of the contributory negligence of the deceased.
The only witnesses who saw the deceased at the time of the
accident were his wife and two laborers in the employ of
the railroad company. These two men were working on
the track at the north-east corner of the intersection when
Mr. and Mrs. Dunworth came south on the east side of
the street. Before going upon the tracks they crossed over
to the west side of the street and then walked over toward
the moving freight train. As Mr. Dunworth started across,
or while he was upon the tracks, the men called to him and
warned him of the passenger train, which was then in sight
coming toward him. He looked toward the approaching
train, waved his hand to the men, called out to them and

went on. The testimony of these witnesses is not contradicted. They were foreigners, unable to speak or understand English, and gave their testimony through an interpreter. It is argued for the defendant in error that the credibility of their testimony was a question for the jury. The jury could not, however, rightfully reject their uncontradicted and unimpeached testimony. Mrs. Dunworth testified that she did not see the train until it was right beside her. She says that when they went upon the crossing they looked to see if there was any train coming, and there was none coming at that moment. It is undisputed that the suburban train could have been seen for a distance of 250 feet and in time to have given ample opportunity to get out of its way, even without the warning of the track laborers. It is argued that the deceased had a right to rely upon the observance of the duty imposed upon the plaintiff in error by the ordinance to have a flagman and to give warning. A flagman could have given no more warning than deceased already had. It is manifest that the deceased expected the freight train to clear the crossing before the suburban train reached it, and that he voluntarily took his chance of being able to cross over behind the freight train ahead of the passenger train. In so doing he was guilty of such contributory negligence as to bar any recovery by his administrator. The court should have directed a verdict for the defendant.

In the course of the closing argument counsel for the defendant in error stated that there was here "the price of $10,000 for a man's life suddenly hurled into eternity;" that if the company was not liable the "jury would not be sitting here trying the case—his honor would have thrown the case out of court;" that if it was not liable "that would have been a question of law for the court, and the court would have told the jury that there was no question of fact;" that he was not going to offer many instructions; that the coroner's inquest and the testimony were not be-

fore the jury; that the defendant's counsel objected to its
coming in and that the plaintiff's counsel had no objection
to its all coming in; that the deceased was a working man,
earning about $600 a year, and the statute provided for the
recovery of $10,000 for death; that counsel did not think
"$10,000 very much for a man's life suddenly hurled into
eternity;" that "if there was $10,000 heaped here on the
floor in gold or in shining silver; that if that man,—this
poor widow's husband,—was placed by the side of that
gold, alive and in good health, as he was, that poor woman
would quickly turn her back upon the gold and silver to
the breast—" All these statements were severally objected
to and the objections were sustained by the court. The
address was an impassioned appeal to the emotions of the
jury, persisted in after repeated objections sustained by the
court. Its deliberate purpose was to arouse sympathy and
excite prejudice, and this purpose was not defeated by the
sustaining of an objection or the withdrawal of one re-
mark to be immediately followed by another of like char-
acter. This kind of argument cannot be justified, and if
willfully persisted in will justify the reversal of a judg-
ment even though the court has sustained objections to it.
It is, of itself, sufficient reason for granting a new trial.

The following instruction was given for the defendant
in error:

"The court instructs the jury that if you believe, from
a preponderance of the evidence, that the plaintiff has es-
tablished his case, as alleged in the first, second or fourth
counts of his declaration, or either of them, then you should
find the defendant guilty and assess the plaintiff's damages
at such sum as you believe, from the evidence and under
the instructions of the court, he is entitled to recover."

The first count of the declaration charged that the de-
fendant propelled certain of its rolling stock upon and over
the person of the deceased, "who was then and there pres-
ent upon the said public highway of Wallace street and in

the exercise of reasonable care for his own safety." The averment of reasonable care in this count was limited to the time when the deceased was in the place where he was struck by the train, while the contention of the plaintiff in error was that he was guilty of negligence in placing himself in that position when he saw or by the exercise of reasonable care could have seen the approaching train and avoided placing himself in a position of danger. The instruction did not cover the care of the deceased in going into the dangerous place, but only his care after he had gone there, and was therefore erroneous. *Krieger* v. *Aurora, Elgin and Chicago Railroad Co.* 242 Ill. 544.

The judgments of the Appellate Court and the superior court are reversed and the cause is remanded to the superior court of Cook county. *Reversed and remanded.*

Mr. JUSTICE CARTER, specially concurring:

I concur in the reversal of this judgment but not in that part of the opinion which states that the court should have directed a verdict for the defendant. I cannot concede that the evidence is of such a nature, on the question of the contributory negligence of the deceased, as to have required such a ruling. The deceased was killed on a dangerous grade crossing, where several tracks of plaintiff in error crossed a public street. An ordinance required a flagman to be stationed there by plaintiff in error. There was a flagman at the crossing, but he was south of the freight train, which was standing across the street when deceased and his wife attempted to cross the tracks on this street, the flagman being in a position where he could not warn them of the approaching danger. The railroad company, in the running of its trains, is required to use ordinary care and prudence to guard against injury to those who may be traveling upon the public highway, whether that be required by ordinance or statute. The fact that a stat-

ute or ordinance may only provide one precaution does not relieve "the company from adopting such others as public safety and common prudence may dictate." (*Chicago, Burlington and Quincy Railroad Co.* v. *Perkins,* 125 Ill. 127.) The evidence is in conflict as to when deceased first discovered the train which caused his death. Counsel for plaintiff in error rely upon the testimony of two of its employees to show that deceased knew of such approach in time to avoid the danger. These two witnesses could not talk English. It is not at all clear to my mind that deceased understood the warning which they claimed they gave him as to the approach of the train. Furthermore, the testimony of these two witnesses does not fully harmonize as to when and how the warning was given. On account of their lack of knowledge of the English language it is somewhat difficult to understand how they could be certain that they gave an effective warning to the deceased. The wife of the deceased contradicts their testimony upon this point. Contributory negligence is ordinarily a question of fact for the jury, and only becomes one of law when the undisputed evidence establishes that the accident resulted from the negligence of the injured party. If there be any difference of opinion on the question, so that reasonable minds will not arrive at the same conclusion, then it is a question of fact for the jury. (*Chicago City Railway Co.* v. *Nelson,* 215 Ill. 436; *Chicago and Joliet Electric Railway Co.* v. *Wanic,* 230 id. 530.) From all the facts and circumstances shown on this record I think the question of contributory negligence of the deceased was properly submitted to the jury.

FARMER and VICKERS, JJ.: We agree with the views expressed in the foregoing concurring opinion of Mr. Justice Carter.