(No. 12013.—Reversed and remanded.)

ANDREAS PIENTA, Defendant in Error, vs. THE CHICAGO
CITY RAILWAY COMPANY, Plaintiff in Error.

*Opinion filed June 20, 1918.*

1. NEGLIGENCE—*Supreme Court cannot weigh evidence to de-
termine questions of fact.* Where the judgment in a personal in-
jury suit supports the verdict of the jury and is affirmed by the
Appellate Court as to questions of fact, the Supreme Court can
examine the record only to determine whether there is any evi-
dence tending to support the cause of action and whether the rules
of law have been properly applied.

2. SAME—*contributory negligence is a question of fact for the
jury.* Whether evidence tends to prove contributory negligence is
a question of law, but whether the plaintiff, as a matter of fact, is
guilty of contributory negligence is a question of fact for the jury;
and while the burden is always on the plaintiff to show that he
was in the exercise of ordinary care, a court can determine ad-
versely to the plaintiff only when no other conclusion can be rea-
sonably drawn from the uncontradicted facts and from the evi-
dence that is favorable to the plaintiff.

3. SAME—*what contradictory statements may be admitted to
impeach a witness.* Contradictory statements of witnesses as to
facts, whether the statements have been made orally or in writing,
are admissible for the purpose of impeachment, but contradictory
statements consisting merely of opinion not connected with facts
or easily separable from statements of facts are not admissible.

4. SAME—*when instruction should not imply that driver of a
wagon was bound to turn to left in passing stalled truck.* Where
it is a controverted question whether the driver of a wagon which
was proceeding south could have turned to the right and passed a
stalled motor truck by going between the truck and the curb instead
of turning to the left onto the north-bound street car track, where
the wagon was struck by a north-bound car, it is error, in an action
for damages for an injury to a person riding with the driver, to
give an instruction stating that it was the duty of all persons, under
an ordinance in evidence, to turn to the left when passing vehicles.

5. SAME—*passenger in vehicle, when he has opportunity, should
warn driver of approaching danger.* It is the duty of a passenger
in a vehicle, where he has an opportunity to learn of danger and
avoid it, to warn the driver of the vehicle of such danger, as he
has no right, because someone else is driving the vehicle, to omit
reasonable and prudent efforts on his part to avoid the danger.

6. SAME—*when failure to ring bell cannot be proximate cause of collision.* Where a traveler has notice of the approach of a train or street car in time to avoid a collision the object of ringing the bell is subserved, and the failure to ring it cannot be held to be the proximate cause of an injury resulting from such a collision.

7. SAME—*when instruction is misleading as to degree of care required in operating street car.* In a suit for personal injuries as the result of a collision with a street car, an instruction which tells the jury that the law does not regulate the precise rate of speed at which a street car must be run under given circumstances, but that the law does "require that said cars be operated with reasonable care so as to prevent them from injuring others lawfully using the streets in which said cars are being operated," is misleading, as impliedly requiring such a degree of care as would absolutely prevent accidents.

8. SAME—*street railway company has superior right on its tracks between street intersections.* At places other than street crossings a street railway company has a right of passage along its tracks superior to the right of one driving a vehicle, but the company must employ all reasonable means to avoid injuring persons rightfully using that portion of the street occupied by its tracks, subject to the rule that such persons must exercise ordinary care for their own safety and not obstruct the passage of the cars.

9. SAME—*instruction that plaintiff's testimony should be given same weight as testimony of other witnesses is erroneous.* An instruction in a personal injury suit stating that the plaintiff is a competent witness in his own behalf and that the jury should "treat him in the same way as any other witness and subject him to the same tests as are legally applied to other witnesses" is erroneous, in that it ignores the fact that the plaintiff's evidence should be weighed in the light of his interest in the result of the suit.

10. SAME—*when it is not error to allow amended record to be filed.* Where the record in a personal injury suit as first prepared for the Appellate Court does not include certain amended counts, it is not error to allow a supplemental record to be filed in the trial court and Appellate Court before the decision of the case in the latter court, to show that the amended counts had been filed though they bore no file-mark, where counsel for both sides during the trial had assumed that said counts were on file and tried the case on that theory.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. OSCAR E. HEARD, Judge, presiding.

CHARLES LEROY BROWN, (JOHN R. GUILLIAMS, of counsel,) for plaintiff in error.

SCOTT O. CAVETTE, VINCENT G. GALLAGHER, and ERNEST MESSNER, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was an action for personal injuries brought by defendant in error in the circuit court of Cook county against plaintiff in error. On trial before a jury a verdict was found against plaintiff in error for $10,000 and judgment entered thereon. On appeal to the Appellate Court that judgment was affirmed, and the cause has been brought here on petition for *certiorari.*

Defendant in error was injured as the result of a collision between a street car and a wagon in which he was riding on Ashland avenue, Chicago, about noon on January 19, 1913. Ashland avenue runs north and south and Thirty-first and Thirty-second streets extend east and west across it, being about eight hundred feet apart. About two hundred feet north of Thirty-second street Robinson street runs into the west side of Ashland avenue. The accident took place some one hundred and fifty feet north of Robinson street. Archer avenue, running from the northeast to the southwest, intersects Ashland avenue at about Thirty-first street. Two street railway tracks occupied the center of Ashland avenue, each track being of standard gauge, four feet eight and one-half inches, and the space between the tracks was about five feet. The space between the west or south-bound track and the west curb was paved with granite blocks and was about thirteen feet seven inches wide. Plaintiff in error was at the time of the accident operating street cars on Ashland avenue on these two tracks. Defendant in error was then eighteen years of age and roomed with one Sova, who conducted a butcher shop. He worked in a motorcycle or bicycle shop, earning about $1.75

a day. His room-mate at Sova's was John Ptasek, who worked in the butcher shop. On the day of the accident Ptasek was driving his employer's one-horse wagon from the place of business to a sauerkraut factory on Thirty-seventh street. Ptasek drove the wagon on Archer avenue to Ashland avenue, where he turned south. He had asked Pienta to come with him and help handle the sauerkraut barrels. Pienta had before that assisted Ptasek on similar trips, particularly on Saturdays, when he was not engaged at his regular work in the bicycle shop. This accident took place on Saturday. On turning into Ashland avenue Ptasek drove his horse in the west or south-bound car track. As he approached a point about three hundred feet south of Archer avenue he found that a heavy motor truck was standing diagonally across Ashland avenue in such manner that its end extended onto the south-bound track. The evidence tends to show that the driver of the truck was down at its front, apparently trying to repair it. Some of the witnesses say that the rear end of this truck was near the curb and some testified that the front end was near the curb. Defendant in error and Ptasek testified there was not enough space between the truck and the curb for their wagon to pass between. Counsel for plaintiff in error contend that the evidence shows that there was room to drive between the truck and the west curb of Ashland avenue. When near the truck Ptasek turned his horse and wagon to the east, partly into the north-bound track, to drive around the stalled truck. From the testimony of defendant in error and Ptasek it was apparent that just about the time they started to turn onto the north-bound track they saw the north-bound car which afterwards collided with them. The testimony as to the wagon's distance from this car at the time it was driven partly onto the north-bound track, as told by various witnesses, differs materially. Ptasek and the defendant in error testified that it was a long distance away,—some two or three blocks,—while some of the wit-

nesses testifying for plaintiff in error said it was only from one hundred to two hundred feet or less south of the stalled truck. Ptasek testified he turned his wagon to the east to get around the end of the truck when he was about one hundred feet north of it. Defendant in error places the distance when they turned out much shorter than this,—about thirty feet north of the truck. There is also a sharp conflict in the evidence as to the speed of the street car. Some witnesses for defendant in error testified as to the car going very fast and did not slack up this speed at all until after the collision, while certain witnesses for plaintiff in error testified that the car was not going more than twelve miles an hour, and the motorman says the electricity was shut off and the car was merely "drifting" along at the time of the collision. All the testimony seems to agree that Ptasek drove the horse and wagon onto the north-bound track so that the wheels of the wagon strode the west rail of said track, then drove south until south of the stalled truck, and then started to turn out of the north-bound track over onto the south-bound track, but before the wagon had entirely cleared the north-bound track the north-bound street car struck it. There is also a question as to just what part of the wagon was first struck by the car. The testimony shows that the wagon was tipped partly over and defendant in error and Ptasek were thrown violently to the ground. Defendant in error struck on his head near or on the west curb-stone of Ashland avenue and was rendered unconscious, remaining in that condition for nearly two days. While there is some dispute in the briefs as to the nature of the injury and whether it is permanent or not, we think the great weight of the testimony is to the effect that it was a serious one, requiring trepanning of his skull, and there is testimony tending to show that defendant in error was permanently injured, and that since the injury he has been subject to epileptic seizures as a result thereof. There is also evidence which tends strongly to show that the ability of

defendant in error to earn a livelihood has been most seriously affected by these injuries. The testimony is also in conflict as to how far the car went before it was stopped after the collision. Some of the witnesses testified that it stopped within a distance of thirty or thirty-five feet, while others place it at over one hundred feet. There is also a conflict in the evidence as to how fast the horse was going when Ptasek was driving around the stalled truck. Testimony on behalf of defendant in error tends to show that the horse was going at a trot, and that just after they had turned onto the north-bound track defendant in error told Ptasek to hurry up.

There is no possible way to harmonize the conflicting testimony on the material points as to just how the accident occurred, either as to the distance of the car south of the stalled truck when Ptasek started to drive over to the north-bound track, or how rapidly the car or the horse and wagon were traveling, or at what point on the wagon—near the front or rear—the car struck. All these are questions of fact, as to which, in a case of this kind, this court must be controlled by the verdict of the jury and the judgment of the trial court as affirmed by the Appellate Court. We can only examine the record so far as to enable us to determine whether there is any evidence tending to support the cause of action and whether the rules of law have been properly applied by the trial court. We cannot inquire as to the weight or preponderance of the evidence. *Libby, McNeill & Libby* v. *Cook,* 222 Ill. 206; *Reiter* v. *Standard Scale Co.* 237 id. 374; *Hinchliffe* v. *Wenig Teaming Co.* 274 id. 417.

Counsel for plaintiff in error argue at great length and with citation of numerous authorities that defendant in error was guilty of contributory negligence and therefore can not recover as a matter of law. While the burden of proof is always on the plaintiff, in proceedings of this kind, to show that when the injury was received he was in the exercise of ordinary care, that question is one of fact, which

must be determined by the circumstances attending and surrounding the injury. Whether the evidence tends to prove such care is a question of law. A court can only determine adversely to the plaintiff when no other conclusion can be reasonably drawn from the uncontradicted facts and from the evidence that is favorable to the plaintiff. "There is no rule of law which prescribes any particular act to be done or omitted by a person who finds himself in a place of danger. In the variety of circumstances which constantly arise it is impossible to announce such a rule. The only requirement of the law is that the conduct of the person involved shall be consistent with what a man of ordinary prudence would do under like circumstances." (*Stack* v. *East St. Louis Railway Co.* 245 Ill. 308.) Ordinarily the question of contributory negligence is one of fact for the jury. On the statement of facts in this record the question whether defendant in error was guilty of contributory negligence was properly submitted to the jury, and as the testimony on this question was not in harmony, it is plainly such a controverted question that the judgment of the Appellate Court affirming that of the trial court precludes us from considering it. (*Guianios* v. *DeCamp Coal Co.* 242 Ill. 278; *Mueller* v. *Phelps,* 252 id. 630.) This is the conclusion which must be reached on this record, regardless of whether defendant in error was equally responsible with the driver of the wagon as to any negligence in driving onto the north-bound track to get around the truck. Even if it be assumed for the purposes of this case, as counsel for plaintiff in error contend it should be, that the question of the negligence of defendant in error is controlled by the reasoning of this court in *Flynn* v. *Chicago City Railway Co.* 250 Ill. 460, still we think that the question of contributory negligence, under the authorities, must necessarily be held to be one of fact, to be submitted to the jury under proper instructions as to the law. The questions of law controlling under such circumstances we shall consider in

passing on some of the questions raised with reference to the instructions given or refused. We do not agree with the argument of counsel for plaintiff in error that the case should have been taken from the jury because defendant in error was guilty of contributory negligence as a matter of law.

Counsel for plaintiff in error strongly insist that the trial court erred in refusing to receive certain testimony that might tend to impeach two witnesses, Traub and Todd, who testified on behalf of defendant in error. Both of these witnesses testified to the effect that the street car, when the wagon driven by Ptasek turned over onto the north-bound track, was more than a block—perhaps two blocks—away. It appears that a representative of plaintiff in error had interviewed both of these witnesses not long after the accident, and after he had talked over the incident of the collision with them wrote down the substance of each witness' statement and presented it to him, and this representative testified that each of them read over his respective statement and signed it. In these statements they both made the distance between the wagon and the car when the former turned over to the north-bound track much less than they testified to at the trial. In both of these statements there were at the conclusion two or three lines which stated, in substance, that the driver of the wagon was entirely to blame, as the wagon had turned in front of the car so suddenly and unexpectedly that the motorman had no chance to avoid the collision. Todd denied that he had signed any such statement, while Traub admitted that the signature to his statement was his. The court refused to allow either Traub or Todd to be asked if he had not stated at the time these statements were made by the representative of plaintiff in error, that in his opinion the driver of the wagon was to blame for the collision, and while the court allowed these statements, except as to the final part as to the opinion as to who was to blame, to be offered in evidence to impeach

the testimony of Traub and Todd, it refused to allow the close of the statements to go in, which stated the opinion of the respective witnesses as to who was to blame. Counsel for plaintiff in error insist that it was error for the court to exclude this part of the statements. The usual rule is to admit for the purpose of impeachment contradictory statements of witnesses as to facts, whether these statements have been made orally or in writing. (7 Ency. of Evidence, 60, 61; Jones on Evidence,—2d ed.—secs. 845, 847.) The question often arises whether a witness can be impeached as to specific facts stated in his testimony by proof of his general expressions of opinion as to the merits of the case or the parties. "No fixed rule can be declared, and although such expressions of opinion are often rejected, yet in other instances where the opinion expressed seems inconsistent with the belief of the witness in the truth of his testimony they may be received." (Jones on Evidence,— 2d ed.—sec. 850.) "It is not necessary that there should be a total opposition or contrariety between the assertion made on the stand and the other statement. The discrediting quality lies in their being substantially inconsistent. * * * Where A testifies for the prosecution that he saw B near the scene of the arson, is it admissible to show that A has elsewhere declared that he is sure that B is innocent? It is common with some courts to say that such statements are inadmissible because mere opinions. But this seems unsound. The true inquiry is, does the other statement in effect involve an assertion inconsistent with that made on the stand?" (1 Greenleaf on Evidence,— 16th ed.—sec. 462a.) And this same doctrine is laid down in *Handy* v. *Canning,* 166 Mass. 107, and *Whipple* v. *Rich,* 180 id. 477. The decisions and authorities on this question cannot be harmonized. The most exhaustive discussion on this subject which has been called to our attention is found in the case of *Denver City Tramway Co.* v. *Lomovt,* Ann. Cas. 1914B, (Col.) 106. After reviewing the authorities

at great length, that decision holds that the expression of opinion by a witness in effect as to who is to blame for the injury could be shown to impeach him during his cross-examination. This court has in one case discussed a somewhat similar question in *Central Railway Co.* v. *Allmon,* 147 Ill. 471, where it was held that a witness could not be cross-examined as to any fact which is collateral and irrelevant to the issue, merely for the purpose of contradicting him by other evidence; that if a witness has testified to a matter of fact, his previous opinion as to the merits of the cause could not be regarded as relevant to the issue. The motorman in that case testified on the trial that he had done all he could to check the speed of the car before the accident; that it occurred so quickly he could not possibly set the brake. On cross-examination his attention was called to the fact that he had had a conversation with certain people, and he was asked if he did not say, in substance, during this conversation, "the fact of the matter is that I neglected my own business and forgot to put on the brake on my car;" and again, if he did not say, in substance, during this conversation, that "he could have stopped the car if he had not lost his head." The witness denied making such statements. The trial court permitted evidence to be offered showing that he had made such statements. We said in discussing this question (p. 481) : "Hence the questions addressed to him on cross-examination with a view of laying a foundation for his impeachment should be directed to matters of fact, only, and not to mere opinions which he has formerly expressed. The latter are inadmissible unless the case is one where evidence of opinion is material. * * * There is much force in this point as to a part of the former statement made by the witness to which his attention was called by the cross-examination. The objectionable part is contained in these words, 'I neglected my own business.' But his statement that he neglected his business was coupled with and explained by the further state-

ment that he forgot to put on the brake. When he said
that he forgot to put on the brake he stated a fact. It will
thus be seen that the question was directed to a matter of
mixed opinion and fact. No objection was made by the
defendant to that portion of the question which had refer-
ence to the matter of opinion." In view of the facts, the
reasoning in that case is against the admissibility of the
statements here in question so far as they contained a state-
ment as to the opinion of the witnesses, and this is particu-
larly true in this case in view of the fact that the opinion
part could be easily separated from the rest of the state-
ments. As stated in *Whipple* v. *Rich, supra,* on page 479:
"Caution should be used in letting in general conclusions to
contradict testimony to particular facts." We do not agree
with counsel for plaintiff in error in this case that the sepa-
ration of the opinion part left the rest of the statements
without their true meaning. Moreover, we do not think
that the leaving out the opinion part materially affected the
statements, because the facts admitted in the statements to
impeach the witnesses were absolutely contradictory of their
testimony as to the distance of the car from the wagon at
the time the wagon turned onto the north-bound track.

Plaintiff in error insists that the court erred in giving
instruction 19 for defendant in error. The defendant in
error had introduced in evidence an ordinance of the city
of Chicago providing that any vehicle overtaking another
shall pass to the left side of the overtaken vehicle. Instruc-
tion 19 told the jury that this ordinance was in full force
and effect and that it was the duty of all persons operating
vehicles on the public streets of Chicago to know and obey
it. The manifest purpose of this instruction was to justify
the driver of the wagon in turning to the left to pass around
the truck. The ordinance in question certainly would not,
under the circumstances found in this record, justify the
driver turning to the left to pass the stalled truck, over onto
the north-bound track, when he would thus be in grave dan-

ger of colliding with the north-bound car.   Particularly
is this true if, as argued by counsel for plaintiff in error,
there was an opportunity to pass to the right of the stalled
truck.   There is force in the argument of counsel that the
giving of this instruction, worded as it was, might tend to
lead the jury to believe that the court thought there was
not space between the stalled truck and the west curb of
Ashland avenue for the wagon to pass through.   Whether
there was sufficient space was purely a question of fact, to
be passed upon by the jury.   There is no intimation in in-
struction 19 to the effect that there was any evidence in
the record tending to show that the driver of the wagon
in question could have passed to the west of the truck.   The
giving of this instruction, in view of the facts in this rec-
ord, we consider serious error.   We do not mean to inti-
mate that even though there was ample space between the
stalled truck and the west curb-stone for the wagon to pass
through, it would necessarily be negligence on the driver's
part to turn to the left of the stalled truck over onto the
north-bound track.   Whether such turning to the left would
be negligence would depend entirely upon the surrounding
circumstances at the time the driver turned to the left, hav-
ing in mind the distance of the street car, the speed at which
the wagon was proceeding, and all the other facts which
ought to be considered.   It would not be negligence to turn
to the left if there was no car in sight for say half a mile
straight south, coming on the north-bound track.   But the
question whether it was negligence was purely one of fact
for the jury, and there should not have been any intimation
by the court, directly or indirectly, in any instruction, as to
whether it was possible for the driver of the wagon to pass
between the truck and the west curb-stone.

Counsel for plaintiff in error further strenuously argue
that the court erred in modifying certain instructions of-
fered by them, among others, instruction 52.   The instruc-
tion as modified is as follows:

284 — 17

"52. The court instructs the jury that while it is a general rule of law that where a person is riding merely as a passenger in a vehicle which is being driven by another, and where such passenger has nothing to do with its management or control, (as in case of a hired vehicle, such as a cab or carriage,) that then the negligence of the driver of such vehicle cannot be imputed to such mere passenger; but if the jury believe, from the evidence in the case and under the instructions of the court, that the plaintiff, at the time and place in question, while riding in the wagon in question, saw the car in question approaching upon the north-bound track while the wagon in which he was riding was going south in the south-bound track, and that he saw and knew that the driver was about to turn or was turning and driving the wagon over and upon the north-bound track in front of the approaching car and into a position of danger, and that the plaintiff then (did not give the driver any warning of such danger and) made no attempt to do anything for his own safety and protection, *and failed to exercise ordinary care for his own safety,* then in such case you are instructed that if you believe, from the evidence, that he did so fail *to exercise such ordinary care* (to give such warning) and did so fail to do anything for his own safety and protection, and that such failure on his part, if you believe from the evidence he did so fail, was negligence on his part (which) *and that it* caused or proximately contributed to cause the accident and injury to himself, then he cannot recover in this case and you should find the defendant not guilty."

The modifications consist in striking out the words in parentheses and substituting those in italics.

Numerous authorities have been cited by counsel on this question as to this instruction and in connection with the argument of counsel for plaintiff in error that as a matter of law defendant in error was guilty of negligence in permitting or sanctioning Ptasek's driving of the wagon over

onto the north-bound track.   We do not agree with counsel for plaintiff in error as to the force and effect of those decisions on this question.   Neither do we think the reasoning in the cases as to the care necessary in approaching a highway crossing of a steam railroad in the country applies with full force to the crossing of a street car track between street intersections in a great city.   A greater degree of care must necessarily be required of the engineer of a steam engine or a motorman of an electric car in running along a public highway or street in a thickly settled locality than would be required in the open country away from all houses, where anyone would have an unobstructed view of approaching objects.   Of course, it necessarily follows, because of the different character and methods of control of a steam engine and of an electric car, that the care to be exercised when a vehicle passes in front of them might be quite different.   In all cases the special circumstances of a given case must be had in mind.   (*Chicago and Joliet Electric Railway Co.* v. *Wanic,* 230 Ill. 530.)   The negligence of the driver of this wagon cannot necessarily be imputed to defendant in error, and this is conceded by counsel for plaintiff in error, although in some parts of their brief counsel argue otherwise.   The negligence of the driver in sole charge of a wagon cannot be imputed to another employee of the owner of the team who is riding in the wagon to assist in making deliveries and who without any fault on his part is injured as the result of the combined negligence of the driver and a street car company.   (*Nonn* v. *Chicago City Railway Co.* 232 Ill. 378.)   While this is true, yet it is also the duty of a mere passenger in the vehicle, where he has an opportunity to learn of danger and avoid it, to warn the driver of the vehicle of such danger.   The passenger has no right, because someone else is driving the vehicle, to omit reasonable and prudent efforts on his part to avoid the danger. (*Robinson* v. *New York Central and Hudson River Railway Co.* 66 N. Y. 11; *Hoag* v. *New York Central and Hud-*

*son River Railway Co.* 111 id. 199; *Flynn* v. *Chicago City Railway Co. supra.*)  We think this instruction as offered stated the law correctly and should not have been modified by the trial court.  Its modification in the manner indicated we consider error.

Instruction 51 offered by plaintiff in error should have been given in the form in which it was offered, for the reasons already given with reference to the rule of law that should govern the modification of instruction 52.  The instruction as offered told the jury that it was the duty of defendant in error to warn the driver of the wagon of the danger as soon as it was apparent to him.  The instruction was modified in such a way as to state that it would be the duty of the defendant in error, when he saw there was obvious danger, to exercise "ordinary care for his own safety."  By this modification the court practically nullified that part of the instruction which said it was the duty of defendant in error to warn the driver of the danger.  The evidence is not in entire harmony as to just what defendant in error said to the driver, Ptasek, at the time the latter started to turn over onto the north-bound track or whether he said anything to him.  Ptasek himself says that defendant in error spoke to him when he first started to turn over onto the north-bound track, while defendant in error testified that he did not speak to Ptasek about it until they got opposite the truck, and all he said to him was "hurry up," but from the facts with reference to any warning that defendant in error should have given, the condition of the record on this point is such that the instruction should have been given as offered.

Counsel for plaintiff in error further argue that the defendant in error's instructions 23, 24 and 27 were misleading, because each of them in effect told the jury that if defendant in error, while riding in the wagon, had nothing to do with the driving or management of the horse and wagon and was at the time of the accident in the exercise of ordi-

nary care for his own safety he could recover; that in effect they told the jury that defendant in error could be in the exercise of ordinary care and yet have nothing to do with the driving or management of the horse and wagon; that they practically declare that the occupant of a vehicle sitting beside a negligent driver can have nothing to do with the driving or management or control of the horse and still can be deemed to exercise ordinary care for his own safety when he does not attempt to interfere to warn the driver as to obvious danger. We are disposed to think there is merit in this criticism of these instructions, and that the jury might assume from the wording of the instructions that the court thought that defendant in error was not required to take any action with reference to warning the driver or as to the management or control of the horse and wagon and might still be exercising ordinary care. In view of what we have said as to the duty of defendant in error to warn the driver of obvious danger we deem these instructions misleading on this point.

Plaintiff in error further contends that the court erred in refusing to give the ninth instruction asked by it, which, in substance, stated that if the jury believed from the evidence that defendant in error saw the car which hit the wagon when said car was several blocks away and knew that the said car was moving towards him, then "it would make no difference whether the bell or gong on said car was sounded or not." The evidence shows without contradiction that defendant in error and the driver saw the car when it was some distance away, and there is also evidence tending to show that the bell or gong on the car was not rung by the motorman or conductor before the collision took place. Several of the instructions of defendant in error stated, in substance, that the neglect to ring the bell might be negligence. It has been held by this court that if a traveler has notice of the approach of a train or street car in time to avoid a collision the object of ringing the

bell is subserved and the failure to ring it cannot be held to be the proximate cause of an injury resulting from such a collision. (*Chicago, Rock Island and Pacific Railroad Co.* v. *Bell,* 70 Ill. 102; *West Chicago Street Railroad Co.* v. *Tuerk,* 193 id. 385; *Roberts* v. *Chicago City Railway Co.* 262 id. 228.) It has also been held that failure by a flag-man to give warning of the approach of a train was not material where the person struck by the train had received warning of its approach from another source. (*Bale* v. *Chicago Junction Railway Co.* 259 Ill. 476.) We think it was error to refuse to give instruction 9.

Plaintiff in error further argues that the court erred in giving instruction 18 for defendant in error, which reads:

"18. The court instructs you that while the law does not regulate the precise rate of speed at which a street car must be run under given circumstances, it does, however, require that said cars be operated with reasonable care so as to prevent them from injuring others lawfully using the streets in which said cars are being operated."

It is argued that this instruction is misleading, in that it implies that in order to be in the exercise of reasonable care the railway company must prevent street cars from injuring others lawfully using the streets in which cars are being operated. This court has held that instructions were erroneous when they impliedly required the giving of such signals as would be absolutely effective to prevent accidents. (*Chicago, Burlington and Quincy Railroad Co.* v. *Dougherty,* 110 Ill. 521; *Wabash, St. Louis and Pacific Railway Co.* v. *Coble,* 113 id. 115.) In the last case this court said: "Yet the jury are told by this instruction that appellant was to give 'signals to persons crossing' and 'keep a lookout so as to see and as far as possible prevent injury to others.'" So it may be said here, the jury are not told at what rate of speed the car must proceed or what signals are required in order to prevent injuries to those who are lawfully using the streets. We do not agree with the Appellate Court that

other instructions cured the misleading wording of this instruction. We think the conclusion necessarily follows that it was error to give this instruction.

Counsel for plaintiff in error further argue that the court erred in giving defendant in error's instruction 20. That instruction reads as follows:

"20. If you find from the preponderance of the evidence, under the court's instructions, that Ashland avenue where the accident in question occurred was at said time a public highway, then the general public had the right to use and travel upon the entire street, including that portion of it on which car tracks were laid, and in so doing they were not trespassers; and it was the duty of operators of street cars in said street, when approaching places where part of the street occupied by their tracks was being used by another, to exercise reasonable care not to run into or injure the person so occupying such part of the street."

In our judgment this instruction, in the light of the facts in this record, might tend to mislead the jury into thinking that defendant in error and the driver, Ptasek, had as much right in driving on the north-bound track as the north-bound car had on that track. This is not the law in this State. Without question it is the duty of those operating street cars, even under such circumstances, to exercise reasonable care not to injure other persons occupying that portion of the street, but it is clearly not the law that a wagon would have a right on this north-bound track equal with that of the north-bound street car, and while, obviously, the driver of the wagon by driving on the north-bound track in the opposite direction from the north-bound car would not be a trespasser in so doing, yet the driver of the wagon would not have the same right on that track as would the north-bound street car, and this instruction, worded as it was, in our judgment, in the light of this record, might tend to lead the jury to believe that he did have an equal right on this north-bound track. While, ordinarily, the question of neg-

ligence must be decided from the facts and circumstances proved in a particular case and is generally one for the jury, that does not mean that the question of negligence is not affected or controlled by rules of law. There can be no question that teamsters and foot passengers may drive or walk across street car tracks between street intersections, but without question their right to do so is much more limited than it is at street intersections. "If teamsters, generally, may drive across street car tracks between street intersections knowing that a collision will be inevitable unless a car is stopped, and intending to take precedence over the car and compel those in charge of the car to stop it, the rights of a street car company upon its track and of the general traveling public would be invaded and practically destroyed. * * * The law does not permit one in such a place to drive in the path of a moving car, relying upon those in charge of the car to stop it and protect him from injury." (*Chicago Union Traction Co.* v. *Jacobson,* 217 Ill. 404.) At places other than street crossings the street railway company has a right of passage along its track superior to the right of one driving a vehicle upon the track in a street. The company must employ all reasonable means to avoid injuring persons rightfully using that portion of the street occupied by its tracks, subject to the rule that such persons must exercise ordinary care for their own safety and not obstruct the passage of the cars. A person may drive upon the tracks of a street railway company laid down in a public street without becoming a trespasser, but it is his duty to leave the track when his presence there serves to impede the passage of the cars. *North Chicago Electric Railway Co.* v. *Peuser,* 190 Ill. 67.

The fourteenth instruction given for defendant in error, it is insisted, is erroneous. That instruction, after stating that defendant in error was a competent witness in his own behalf and his testimony could not be discredited through mere caprice, continued: "You are to treat him in the same

way as any other witness and subject him to the same tests as are legally applied to other witnesses." There can be no question that this instruction is erroneous in that it ignores the fact that defendant in error's evidence should be weighed in the light of the fact that he is interested in the result of the suit and therefore may be differently situated from any other witness. We do not think the other instructions referred to by counsel for defendant in error cured this omission. Neither do we think the wording of this instruction brings it within the reasoning of this court in *Dickerson* v. *Henrietta Coal Co.* 251 Ill. 292. While we might not be disposed to reverse the case for this error alone, the instruction in the form given was erroneous.

Counsel for plaintiff in error contend that the court erred in giving the thirteenth instruction for defendant in error, which assumes that two amended counts had been filed and were before the jury for consideration. It appears that the record made up for the Appellate Court did not at first show that these amended counts had been filed; that a supplemental record was prepared and allowed to be filed by the trial judge, which thereafter was permitted to be filed in the Appellate Court before the decision there of this case. It is insisted that the trial court erred in allowing this amended record to be filed. The principal objection made to the ruling of the trial judge is that there was no minute or memorandum made at the time these so-called amended counts were claimed to be filed that justified an order being entered after the expiration of the term permitting them to be filed. It appears from the evidence that on April 14, 1916, the trial judge allowed defendant in error to file amended counts, but, as already stated, these amended counts did not appear in the record when first taken to the Appellate Court. Thereafter a bailiff of the trial judge found in that judge's desk in chambers four documents held together with a clip. Two of these documents consisted of the original declaration and the carbon

copy thereof, both bearing the file-mark of the clerk. The third document was the amended counts in question but not containing any file-mark. The fourth document was a draft of certain additional counts which it is conceded were never filed. It appears that it was assumed by counsel on both sides that these amended counts were on file at the time of both the first and second trials; that counsel for plaintiff in error assumed that such counts were on file and in both trials offered instructions to the court under that assumption. We do not think that, having tried the case in the court below as if these amended counts were on file, the objection can now be raised that they were not so filed or that plaintiff in error was harmed by so holding. *Pease* v. *Rockford City Traction Co.* 279 Ill. 513; *Zukas* v. *Appleton Manf. Co.* id. 171.

Numerous other errors are urged as to instructions given and refused which we do not deem it necessary to discuss or consider at length,—among others, an instruction as to proximate cause, another as to damages, another as to the consideration that the jury should give to statements introduced for the purpose of impeaching certain witnesses. While there is some merit in certain of these criticisms, we do not think that the error in any of those instructions was of such nature as to require the reversal of the case.

Counsel for plaintiff in error, on oral argument in this court, for the first time, apparently, raised the question of the right of defendant in error to bring suit against plaintiff in error. As we recall the oral argument, it was to the effect that defendant in error is an Austrian subject, and therefore an alien enemy now if not at the time this litigation was instituted, and therefore the suit could not be prosecuted by him to its final conclusion. As there is nothing in the record before us that clearly shows these facts and no arguments are presented on this point in the printed briefs, we do not think we can satisfactorily pass on this question. We only refer to it to show that it was raised

in this court and the manner in which it was raised, so that the matter may be properly considered, if desired, in accordance with the facts, on the new trial of the case.

The errors in the instructions which we have pointed out, in view of the record in this case, are of such a serious nature that we cannot hold them harmless. We think, considered together, they must be held to be reversible error.

The judgments of the Appellate and circuit courts will be reversed and the cause remanded for further proceedings in harmony with the views herein expressed.

*Reversed and remanded.*