Mary Swientek, Administratrix, Appellee, v. Chicago
& Northwestern Railway Company, Appellant.

Gen. No. 7,034.

1. RAILROADS—*when failure to sound engine bell at street cross-
ing is not actionable.*   Liability of a railroad company for the death
of its switch-track crossing watchman cannot be predicated on
the failure of the engineman to sound the bell on a switch engine
as it emerged from the entrance of a tunnel, even though it was
a practical or customary rule to do so under like circumstances at
the place in question, where such watchman, whose duty it was
to warn the public of the approach of the engine, was familiar with
all the conditions at the place in question, was aware of the ap-
proach of the engine which was making much noise and emitting
clouds of smoke, and, with such knowledge, took a place of danger
on the track although his duties could be performed on either side
of the track out of danger.

2. MASTER AND SERVANT—*assumption of risk.*   A crossing watch-
man whose duty it was to stand at the mouth of a tunnel opening
onto the street and warn the public of the approach of trains from
such tunnel assumed the risk of injury from an approaching switch

14     APPELLATE COURTS OF ILLINOIS.

Swientek v. Chicago & Northwestern Ry. Co., 226 Ill. App. 13.

engine under the Federal Employers' Liability Act, where, with complete knowledge of the situation and conditions and that such engine was approaching, he left his place of safety at the side of the track, without any necessity for so doing, and started to cross the track in front of the approaching engine.

Appeal from the Circuit Court of Lake county; the Hon. CLAIRE C. EDWARDS, Judge, presiding. Heard in this court at the October term, 1921. Reversed with finding of fact. Opinion filed August 5, 1922.

HERVEY C. COULSON and NYE F. MOREHOUSE, for appellant; NELSON J. WILCOX, of counsel.

AUGUSTINE J. BOWE and WILLIAM J. BOWE, for appellee.

MR. JUSTICE JONES delivered the opinion of the court.

The appellee recovered a judgment for $5,000 in the circuit court of Kane county against the appellant on account of the death of John Ptaszynski and from that judgment the appellant prosecuted this appeal.

The deceased was a watchman employed by the appellant in its switch yards on the north bank of the Chicago river in the City of Chicago. His duties covered several points of danger to the public in that district. One main track or lead ran along Austin avenue with spur tracks branching off at angles into various large factories and warehouses along either side of this street. Hibbard, Spencer, Bartlett & Company have a large warehouse on the south side of Austin avenue one block north of the Chicago river. There is an opening or arch through the building termed a tunnel which tunnel is between fifty and seventy-five feet in length. The spur track leading into it enters at an angle and the tunnel curves to the southeast. The tunnel is fifteen feet wide and high enough to clear the smokestack of the switch engine

Swientek v. Chicago & Northwestern Ry. Co., 226 Ill. App. 13.

about two feet. The clearance between the engine cab and the sides of the tunnel leaves only room enough for a man to pass. The spur after going through the tunnel runs south alongside the Hibbard, Spencer, Bartlett & Company building where there is a long covered platform from which cars are loaded and unloaded. About five o'clock on the evening of September 23, 1920, the switch engine was taken into the tunnel from Austin avenue for the purpose of pulling out eight or nine cars then standing on the track south of the tunnel. The deceased stood near the entrance for the purpose of warning the public of the engine's coming out of the tunnel. This movement was carried out each day at about the same time. On the occasion in question, the engine had gone into the tunnel and an effort had been made to couple two cars on to it. A successful coupling was not made and a switchman attempted to signal to the engineer to pull up about ten feet in order to effect a proper coupling. The engineer understood the signal to direct him to proceed out into the street and he accordingly moved the engine out of the tunnel. The puffing and other noises of the engine were very audible because of the tunnel. A great cloud of smoke came out of the entrance rendering it difficult to see the approach of the engine. When the engine passed into the tunnel the deceased stepped into the center of the spur track just at the outside of the entrance. From there he passed to the west side of the track, then back to the east side and turned and was recrossing to the west side. While he was so doing the engine came out of the tunnel, and struck him, injuring him so badly that he died from the effects of the injuries without regaining consciousness.

The evidence shows that it was not necessary for the deceased to stand immediately in front of the engine as it came out of the tunnel to enable him properly to warn the public. He could have stood at

16 APPELLATE COURTS OF ILLINOIS.

Swientek v. Chicago & Northwestern Ry. Co., 226 Ill. App. 13.

one side of the track and not have placed himself in a position of danger. The evidence further shows that two teamsters driving separate wagons approached from the west and that the watchman signaled them to cross over to the north side of the main track. One of the teamsters had his attention attracted to the opening of the tunnel by the smoke coming out of it. He saw and heard the engine approaching the street. He yelled at the watchman to look out. They were much farther away from the engine than the deceased was.

The only ground urged in this court as a basis of recovery by the appellee is that the appellant failed to sound the bell on the engine so as to warn the deceased of the approach of the locomotive. The appellee contends that it had become a custom in that place and under the same circumstances for the engineer to sound a bell before the engine came out of the tunnel. The evidence tends to show that it was usual and customary for the bell to be sounded while the engine was in motion coming into or going out of the tunnel. It does not appear that the custom of ringing the bell when coming out through the tunnel differed in any respect from that in vogue when the engine goes in through it. Indeed there was undoubtedly no difference because the bell was rung by an automatic device. It would be difficult if not impossible to determine from the mere sound of the bell which direction the engine was moving. There is considerable conflict in the evidence as to whether the bell was sounded. Even if it were sounded it is probable it could not have been heard, in view of the evidence as to the great noise made by the engine within the walls of the tunnel.

The undisputed evidence is that the deceased was a watchman in the employ of the appellant and it was his duty to watch the opening of this tunnel so that he could warn the public of any danger which might

arise by reason of the engine's coming out of the tunnel. He knew that the engine was in there. He knew that it would come out in a very short time and it was his duty to watch and to ascertain when it did come out.

The declaration does not expressly aver a violation of any positive law or rule as to sounding a bell, still, this question seems to have been one of the contested points in the case. Under the facts in this case, it is of little importance whether or not there was a law of the State or a practical rule of the company requiring a bell to be rung while the engine was approaching the street from the tunnel. The only value a signal can have is to convey information to those for whom it is intended. The ringing of a bell or the blowing of a whistle on an engine is to attract the attention of those who may be in a place of danger. It is to notify them, to inform them of the approach of the engine. If it be the duty of the enginemen to give such notice or warning and if they fail to give it and in consequence thereof a person is injured, a recovery can be had. But the injury must be in consequence of such omission of duty. The negligence of the engineman in not ringing the bell must be the proximate cause of the injury.

In the case of *Pienta v. Chicago City Ry. Co.*, 284 Ill. 246, the Supreme Court of this State said: "It has been held by this court that if a traveler has notice of the approach of a train or street car in time to avoid a collision, the object of ringing the bell is subserved and the failure to ring it cannot be held to be the proximate cause of any injury resulting from such collision." It has also been held in *Bale v. Chicago Junction Ry. Co.*, 259 Ill. 476: "That failure by a flagman to give warning of the approach of a train was not material where the person struck by the train had received warning of its approach from another source."

If he had knowledge of its approach gained through any other means, then it is of no consequence whether a bell was rung or not. He could not have failed to hear the puffing of the engine within the walls of the tunnel. He was only a very few feet from the opening and he must have observed the smoke. His conduct in signaling the two teamsters to get on the north side of the rails in the street indicates not only that he knew the engine was in motion but the direction it was moving. We cannot avoid the conclusion that he knew of the approach of the engine regardless of whether or not a bell was rung. With a realization of the movement of the engine toward him, he took a position on the rails which necessarily put him in the direct course of its travel. He had ample space to stand on either side of the spur and out of danger while he looked into the archway and performed any of his duties. Whatever may have been his purpose in crossing the track, he must be held to have assumed the risk of his doing so. He knew the engine was coming. He knew over what rails it would pass. And having this knowledge of the situation, with perfect freedom to put himself in a place of safety, he chose to go where danger was. He may have misjudged the distance the engine was from him but this does not excuse him. He assumed the risk that obviously would attend his crossing the track in front of a moving engine. (*Southern Pac. Co. v. Berkshire*, 254 U. S. 415.) He sought to perform his duties in a perilous manner when a safe method was available to him. He therefore assumed the risk of being injured by the engine.

Under the Federal Employers' Liability Act the deceased assumed not only the risks ordinarily incident to his employment but also the risks caused by his master's negligence, if obvious or fully known to him or such as would under the circumstances be appreciated by an ordinarily prudent person. (*Boldt*

*v. Pennsylvania Ry. Co.*, 245 U. S. 441 [19 N. C. C. A. 461]; *Jacobs v. Southern Ry. Co.*, 241 U. S. 229.) So that even if it were the duty of appellant, under the law of the State or because of a practical rule of the company, to ring a bell when the engine was coming out through the tunnel, and even if the appellant failed to give such warning, there can be no recovery in this case, because an ordinarily careful person, under the circumstances, would have observed and appreciated the danger. From what we have already said, it is unnecessary for us to discuss the instructions which are complained of by counsel for appellant nor is it necessary to note other assignments of error.

The judgment of the trial court is reversed with a finding of facts.

*Reversed with finding of facts.*

Finding of facts: We find that the appellant was not guilty of the negligence charged against it in either count of the declaration; that the appellee's intestate assumed the risk of the danger which resulted in his injuries and death; that the approach of the engine through the tunnel in question and toward Austin avenue was fully known to said deceased; and that the dangers present at and before the deceased received his injuries were so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them.