## Fred Greenstreet, Appellee, v. Atchison, Topeka and Santa Fe Railway Company, Appellant.

### Gen. No. 7,356.

1. RAILROADS—*compliance by railroad company with statutory requirements as to signals at grade crossing as jury question in personal injuries action.* In an action for damages sustained by plaintiff in a collision between the truck on which he was riding and defendant's train at a highway crossing, where there was a direct conflict in the evidence as to whether any signal was given by the train as it approached the crossing and as to the speed of the train, it was for the jury to say whether statutory requirements were complied with by those in charge of the train.

2. RAILROADS—*whether obstructions to vision at grade crossing negligently maintained by railroad as jury question in personal injuries action.* Where obstructions were negligently maintained by a railroad company on its right of way at a highway crossing was a question for the jury where the evidence was undisputed that there were obstructions consisting of stockyards, fences, bunk houses and trees which obstructed the view of passing trains from the highway until the traveler came within 55 or 65 feet of the crossing but that from that point the view was unobstructed for at least 790 feet, which increased as the traveler approached the track.

3. RAILROADS—*when contributory negligence of truck driver at grade crossing shown by evidence.* In an action for damages sustained by plaintiff when the auto-truck, on the seat of which he was riding with the driver, collided with defendant's train, where the evidence showed that the train could have been seen at any point between the track and 55 feet therefrom; that both train and truck proceeded to the point of collision without slackening speed and that the driver of the truck failed to obey a statutory provision requiring him to stop at or before reaching a stop sign placed at the crossing by the highway authorities, there was such contributory negligence proximately resulting in the injury as to preclude recovery.

4. NEGLIGENCE—*duty of passenger on motor truck to exercise care at railroad grade crossing.* One riding in an automobile is bound to exercise due care and caution for his own safety and to warn the driver of any danger that may arise, and if his failure to do so contributes to his injury it will be such negligence as will bar recovery.

5. RAILROADS—*insufficiency as matter of law of evidence as to due care by passenger on motor truck at grade crossing.* Where the only evidence that one seeking to recover for injuries sustained in a collision between the truck in which he was riding and a railroad train exercised ordinary care for his own safety was that he looked for a train more than 55 feet from the track at a point where his view was obstructed, and it appeared that if he had looked thereafter he could not have failed to see the train, a verdict for plaintiff should have been set aside.

Appeal by defendant from the Circuit Court of Warren county; the Hon. WILLIS F. GRAHAM, Judge, presiding. Heard in this court at the April term, 1924. Reversed and remanded. Opinion filed August 6, 1924.

HOMER W. DAVIS and GRIER, SAFFORD & SOULE, for appellant; R. S. OUTLAW, of counsel.

L. E. MURPHY and JOHN J. KRITZER, for appellee.

MR. JUSTICE JONES delivered the opinion of the court.

Fred Greenstreet, plaintiff below, instituted his suit in the circuit court of Warren county against the Atchison, Topeka and Santa Fe Railway Company, defendant below, to recover for injuries sustained by him in a collision between an automobile in which he was riding and a train operated by the defendant. There was a trial and a verdict in favor of the plaintiff in the sum of $1,500. After overruling a motion for a new trial, the court rendered judgment on the verdict, and the defendant prosecuted its appeal therefrom to this court.

The declaration upon which the cause was tried consists of five counts. The first count alleges negligence in the operation of the train, the second count, failure to give the statutory signal by bell or whistle, and the third count, negligence in keeping stockyards, buildings, fences, sheds, trees and brush upon the right of way, so that they obstructed the view of passing trains from the public highway. The fourth

count charged that the defendant failed to operate its trains in a careful and cautious manner, for the safety of persons traveling in the public highway, and the fifth count charged that taking into consideration the obstructions on the right of way, the defendant company was negligent in driving its train towards said crossing at a high and dangerous rate of speed. The defendant filed the general issue and certain special pleas. No questions, however, appear in the argument relative to the special pleas. The only issues in the case are whether the defendant was guilty of the negligence charged in the declaration, whether the plaintiff was in the exercise of due care and caution for his own safety at the time of the accident and whether the court erred in giving instruction number 5.

In our view of the case, it is unnecessary to discuss the evidence with relation to the negligence of the defendant. There is a direct conflict in the evidence on the question of whether a whistle was blown or a bell sounded in compliance with the statute. There is likewise a conflict in the evidence concerning the rate at which the defendant's train was approaching the crossing. There is, however, no conflict with respect to the obstructions upon the right of way and it is clear that there were obstructions consisting of stockyards, fences, buildings, bunk houses and trees, which obstructed the view of passing trains from the public highway until the traveler came within 55 or 65 feet of the crossing, but that from that point on the view is unobstructed for a distance of at least 790 feet from the crossing, which increased as a traveler approached the track. At a distance of 15 or 20 feet from the track, an approaching train could be seen approximately one-half mile. It was for the jury to say whether statutory requirements were complied with by those in charge of the train and whether the obstructions were negligently maintained upon the right of way.

The serious question relates to whether or not the plaintiff was guilty of contributory negligence. On the morning of June 24, the plaintiff, with his co-employee, Harry Ruse, left Monmouth with a truck loaded with farm implements to be delivered to farmers living in the vicinity of Ormonde. In the course of making deliveries, they reached the Fillman farm south and west of Ormonde. They left this place at about 4:14 o'clock in the afternoon to go to a farm residence in the neighborhood northeast of Ormonde. To reach that point they necessarily had to travel the public highway, extending north and south, east of the Ormonde depot. The highway intersects the main line tracks of the defendant company at a point 790 feet east of the Ormonde depot. The railroad tracks run in a northeasterly and southwesterly direction. The plaintiff was riding on the right-hand side of a truck driven by Harry Ruse, who lost his life in the accident. The truck was inclosed with a cab with doors, which had windows in them. The windows were open and the windshield was open. The glass in the back of the cab was broken out. The driver sat upon the left-hand side of the truck. The defendant's train, which collided with the truck, consisted of an engine drawing a tender, and pushing ahead of it a flat car and two cabooses. It was not a scheduled train but was a work train hauling employees to a point east of Ormonde.

As stated above there is a stockyard on defendant's right of way, south of the east-bound main line. It is 55 feet from the northern boundary line of the stockyard to the center of the east-bound track upon which defendant's train traveled. The north and south boundary fences of the stockyards are parallel to the tracks, extending in a northeasterly and southwesterly direction, thus making the northwest corner of the stockyards about 65 feet farther south than the northeast corner. There is a switch track running close by

the stockyards and a passing track between the switch track and the main line. On the day in question, however, these tracks were clear of cars for more than 600 feet from the highway crossing. At the right side of the highway and within 20 feet of the switch track there is a stop sign, placed there by the authority of the Commerce Commission of Illinois. Three hundred feet back of the crossing there is a railroad crossing sign placed by the highway commissioners. This sign is of little importance because both the plaintiff and Harry Ruse were quite familiar with the crossing.

The plaintiff testified that as they approached the crossing from the south, he and the driver were looking for trains; that while there were openings between the stockyards and the buildings west of them they did not see any train. The plaintiff further testified that from the time he was even with the middle of the stockyards until after he regained consciousness, he has no recollection of anything that he saw or did. He testified that they were traveling from twelve to fifteen miles an hour at the time he last remembered. That would be at a point approximately 75 feet from the crossing. George Coates was plowing corn in a field just west of the highway and south of the railroad. He saw the collision. His testimony is that he heard the train whistle down by the station or farther west; that he saw both the truck and the train approaching the crossing and noticed that unless one or the other stopped there would be a collision; that he stood up in the stirrups of his riding cultivator to get a better view; that the truck was traveling between fifteen and twenty miles per hour and never stopped or slackened speed until it was struck by the train. Likewise he saw no difference in the speed of the train. He did hear the air whistle on the train. The engineer of the train and one of the brakemen testified that they saw the truck before it came up even with

the stockyards and the buildings west of them and neither of them made any effort to stop the train because the truck was traveling slowly and they thought it would stop. They testified that it did not become apparent that the truck was not going to stop until it was too late to stop the train and avoid the collision. These are the only witnesses who actually saw the collision. The testimony of the others is with respect to the speed of the train and whether or not a bell or whistle was sounded.

We have come to the conclusion that the contention of the defendant that the plaintiff in error has not proven that he was in the exercise of due care and caution for his own safety at the time of the accident and that therefore he is not entitled to recover under the evidence produced on the trial of this cause, is correct. It is clear that the driver of the truck failed to obey the provision of the statute requiring him to stop at or before reaching the stop sign referred to. It is also clear that his failure to obey the law was the proximate cause of the injury. Events follow in an unbroken sequence from this act of negligence to the injury within the definition of proximate cause by the Supreme Court in the case of *Illinois Cent. R. Co. v. Siler*, 229 Ill. 390; and *Morrison v. Flowers*, 308 Ill. 189. But it is also true that the negligence of the driver will not ordinarily be imputed to the person riding with him. (*Pienta v. Chicago City Ry. Co.*, 284 Ill. 246.) But one riding in an automobile is bound to exercise due care and caution for his own safety and to warn the driver of any danger that may arise. His failure to do so if it contributes to the injury will be such negligence as will bar him from a recovery.

. The Supreme Court said in *Opp v. Pryor*, 294 Ill. 538:

"It was essential for the plaintiff to prove that she was in the exercise of ordinary care for her own safety in approaching and going upon the crossing and she

was not relieved from that duty because she was riding in an automobile. If she exercised such care any negligence of Ethel Shambaugh could not be imputed to her, but she would be responsible for her own negligence. The plaintiff sat at the right of the driver in front, with at least equal opportunity to observe danger and the approach of the train, and being bound to prove the exercise of ordinary care by herself, it was no less her duty than that of the driver to observe and avoid danger, if practicable, and to warn the driver. (*Flynn v. Chicago City Ry. Co.*, 250 Ill. 460; *Pienta v. Chicago City Ry. Co.*, 284 Ill. 246.) The plaintiff testified that she had no remembrance of the occurence and her only reliance to prove her ordinary care was the testimony of Ethel Shambaugh and Belle Wood as to what they could see. If Ethel Shambaugh was not guilty of any negligence in driving the car and could not see or hear anything to indicate the approach of the train, it would, perhaps, be a fair inference that the plaintiff could not, but the instruction was inconsistent and contradictory in substantially telling the jury that although Ethel Shambaugh did not exercise ordinary care for the safety of those in the automobile yet the plaintiff might have been in the exercise of such care herself, without the slightest evidence that she did anything at all.''

The case of *Pence v. Hines,* 221 Ill. App. 584, was a crossing case similar to the one before us in which there was an unobstructed view of the track for a quarter of a mile at a point on the highway forty feet from the track. The plaintiff was riding with his father, who drove the car. The court said:

''Under the facts shown by the evidence it was clearly his duty to use ordinary care in crossing the tracks and to warn his father of the approaching danger. This he did not do, but was guilty of contributory negligence.''

Proof by the plaintiff that he was in the exercise of ordinary care for his own safety is essential to his recovery and the only evidence of anything that the plaintiff did to avoid the injury is that he looked for

a train more than 55 feet back of the track at a point where it is undisputed that his view was obstructed. There is no evidence of any kind to show that from the time he passed the obstructions until the collision he did anything to ascertain whether a train was approaching the crossing or to warn the driver ' of its approch. If he had looked, he could not have failed to see the train.

We are of the opinion that the court erred in declining to set aside the verdict and to grant a new trial because of the failure of the plaintiff to prove that he was in the exercise of ordinary care for his own safety at and before the time of injury.

For the reasons stated, the judgment will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*